### STAPLES *against* GOULD.

Where a broker sells for his principal shares of a certain stock, which neither owns at the time of sale, deliverable, at the option of the principal, in thirty days, and the broker within that time, and without the assent of his principal, delivers the stock at a loss, he does so at his peril; and money deposited with him to meet any difference against the principal on the contract at the end of the thirty days might, if the difference at that time would have been in his favor, be recovered back by the principal, but for the statute against stock-jobbing.

Such transaction, however, being illegal by the statute referred to (1 *R. S.*, 710, § 6), no action can be maintained upon it by either party; and the 8th section of that act does not authorize an action to recover back the sum so deposited.

Staples *against* Gould.

ON the 15th of January, 1851, the plaintiff employed the defendant, a broker, to sell for him two hundred shares of Canton Company stock, at $66 per share, deliverable, at the plaintiff's option, at any time within thirty days from that date. At the same time he deposited with the defendant the sum of $750 "for the purpose of protecting the defendant against loss or damage in the business of such agency," with the understanding between the parties that the defendant should retain so much thereof as should be necessary to indemnify him for any loss he might sustain by reason of such sale. In pursuance of his employment the defendant on the same day made contracts for the sale to two firms of one hundred shares each, upon the terms specified in his agreement with the plaintiff. The contracts were made in the name of the defendant, without his disclosing to the purchasers that the plaintiff was his principal. The defendant did not at the time he made the contracts of sale own any of the stock in question, nor did the plaintiff on that day or at any time within the thirty days succeeding.

On the twentieth of January the defendant delivered to each of the purchasers the one hundred shares of stock contracted to be sold to them. There was no evidence tending to show assent to or knowledge of this delivery on the part of the plaintiff. On the morning of the twentieth the stock sold at $80 per share, and at the close of the day at $85. At the expiration of the thirty days the stock was below $66 per share, and had fluctuated much within that time.

This action was brought in the superior court of New-York to recover back the $750 deposited, and was tried before Mr. Justice OAKLEY and a jury in December, 1851. A verdict was directed for the plaintiff, subject to the opinion of the court at general term. The court ordered the verdict set aside and a judgment of nonsuit

entered. (5· *Sandf.*, 411.) The plaintiff appealed to this court.

*S. Beardsley* for the appellant.

*J. Larocque* for the respondent.

JOHNSON, J. If there were no question of illegality in the case, it is quite clear that the plaintiff would be entitled to recover the money which he deposited with the defendant. The loss which the defendant incurred by the delivery, on the 20th of January, of the two hundred shares of Canton stock to the persons with whom he had, on the 15th of January, contracted on the plaintiff's behalf to deliver it at any time within thirty days from the making of the bargain, at the plaintiff's election, was incurred solely by his unauthorized act in making that delivery. At the expiration of the time for delivery limited by the contract the price of the stock had fallen, so that by the performance of the contract at that time the plaintiff would have been a gainer instead of a loser, and no resort to the fund deposited in the defendant's hands to indemnify him would have been necessary.

The defendant, however, insists that the contract which he as a broker entered into on the plaintiff's behalf was illegal, the plaintiff at the time of making the contract not having been in the actual possession of the stock sold, or otherwise entitled in his own right to sell the said stock, or authorized to sell the same by any person so entitled. That the plaintiff was not so entitled or authorized at the time of making the contract is clear upon the face of the case, and is not controverted on either side ; and the statute as clearly declares that the contract for the sale of the stock was absolutely void. ( 1 *R. S.*, 710, §, 6. )

The money must be taken upon the admissions in the pleadings to have been placed in the defendant's hands by

way of inducement to and in furtherance of his engagement with the plaintiff to enter into the contracts for the sale of the stock on the plaintiff's account. As such contracts for the sale of stock are forbidden by the statute before referred to, this deposit was made for an unlawful purpose, and upon common law principles, the plaintiff and defendant being *in pari delicto*, no action can be maintained by either party against the other.

The question then remains, whether this deposit comes within the provisions of the 8th section of the same title (1 *R. S.*, 710, § 8), which in certain cases gives an action to recover back money paid or property delivered. The language of the section is: "Every person who shall pay or deliver any money, goods or thing in action, by way of premium or difference, in pursuance of any contract or wager in the two last sections declared void, and his personal representatives, may recover such money, goods or other thing in action, of and from the party receiving the same, and his personal representatives." Although this section makes illegal in terms all payments made in contravention of its provisions, and consequently all contracts, loans or advances made in furtherance of any such illegal payments, it by no means follows that in the last class of cases a right of action is given to recover back that which has been so loaned or advanced. The general rule of the common law is, that an action cannot be maintained, and it is only authorized in the precise case which the statute creating the exception to the common law rule provides for. For instance, it is illegal for A to pay to B a premium or difference upon an unlawful stock contract; and if paid, A may recover it back. But if a third person loan money to A to be applied to such an illegal payment, the case is not within the terms of the law; and the same views of public policy which led to the enactment of the law that A might recover back the money paid from B, would dictate that a third person advancing money to A, to be applied to such an

illegal payment, should not be allowed to recover it back from A. In the first case, the illegal dealing is discouraged by rendering even a payment in pursuance of it ineffectual. In the last case, third persons are discouraged from facilitating such dealings, by taking away their legal right to get back the money loaned or advanced for such illegal purpose. So to construe the law as to enable a recovery to be had upon such a loan, would greatly facilitate and encourage the very dealing which it was the object of the statute to prevent. The 6th section makes void a contract for the sale or transfer of stock between the buyer and seller; those are the two parties, and the only parties, to whom the terms of the statute are applicable. The dealing between them is what the statute forbids. The contract between the seller and his broker is not void because the statute in terms forbids it, but because it is a contract in furtherance of a sort of dealing which the statute law has declared illegal, and, therefore, illegal upon common law principles. So I think the 8th section was intended to operate upon the same parties who are within the contemplation of the 6th section. The purchaser or seller who has paid or delivered any money, &c., in pursuance of such an illegal contract, may recover it back from the purchaser or seller who has received it. The evil was, that notwithstanding the contracts of sale were illegal, the parties would pay differences in pursuance of them, and the remedy is, that such payments are made ineffectual, by authorizing the party who has made the payment to recover it back. I think, therefore, that the plaintiff's case does not come within the provisions of the 8th section. What was said by the chancellor in *Gram* v. *Stebbins* (6 *Paige*, 124), if it is to be regarded as founded upon his view of the construction of this section, was, I think, too little considered, and is undoubtedly to be accounted for by the fact that it was in no way material to the decision, which was put upon the express ground that the case did not present the point

upon which he cursorily expressed his views. I am of opinion that the judgment should be affirmed.

The whole court concurred.

Judgment affirmed.