## UNITED STATES v. SLATER et al.

(District Court, E. D. Pennsylvania.  January 16, 1922.)

No. 165.

**1. Conspiracy ⬳33—To defeat purpose of Prohibition Act is one to "defraud" the United States.**

"Defraud," as used in Criminal Code, § 37 (Comp. St. § 10201), making conspiracy to defraud the United States a criminal offense, is not limited to depredations on property rights, but is broad enough to include any which interferes with or hampers the United States in the successful prosecution of any policy established by law, and a conspiracy to defeat the purpose of the National Prohibition Act, to prevent the sale of liquor for beverage purposes, is within such provision of the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Defraud.]

**2. Conspiracy ⬳43 (6)—Indictment held not demurrable.**

That some of the defendants charged in an indictment for conspiracy to violate the National Prohibition Act, as shown by the averments were the intended purchasers of the liquor, which purchase is not in itself an offense, *held* not to render the indictment demurrable as to such defendants, where the ultimate purpose of the conspiracy as charged, to which such defendants were parties, was to effect the unlawful sale.

Criminal prosecutions by the United States against Albert F. Slater and others on several indictments. On demurrers and motions to quash indictments. Demurrers overruled, and motions denied.

T. Henry Walnut, Asst. U. S. Atty., and George W. Coles, U. S. Atty., both of Philadelphia, Pa.

Joseph K. Willing and Robert J. Sterrett, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. There are several indictments. The questions raised were all argued together. They will in consequence all be discussed in one opinion.

An outline of the fact theory in support of these indictments is that there was a criminal conspiracy to violate the laws of the United States aimed at the suppression of all traffic in intoxicating liquors for beverage purposes. The success of the conspiracy was dependent upon an unbroken chain of co-operating links. An essential link at one end was the purchasing consumer; at the other was the equally necessary source of supply. Intermediately was the transporter. The chain was constructed out of these links by the dealer who forged the links into a chain. The consumer was concerned with the source of supply. No one, unless driven to recklessness by a craze for alcoholic,

stimulants, or led by the crassest folly, would risk his life by drinking the poison illicit dealers sell. There was a supply less open to this risk in the stock of liquors provided for other than beverage purposes. This, however, could be reached only through the state agents, who could release it by granting permits. It thus became necessary to bring them, or some of them, into the conspiracy. As soon as they were found, the other links were at hand. The conspiracy thus formed embraced two of the defendants, who were to get the liquor out of bond, others, who were to transport it, the consumers, who were to get it, and the dealer, under whose supervision and direction all were to operate.

The first quest which confronted the draftsman of the indictments was to find a law which made such a conspiracy unlawful. He found it in section 37 of the Criminal Code (Comp. St. § 10201). This makes all conspiracies to do either of two things a crime. One is to commit or have committed an offense against the laws of the United States; the other is to defraud the United States. Here at once a choice was presented to the pleader. He might charge the conspiracy to have the one objective or the other, or he might, without violating the rule against duplicity, charge the same conspiracy in one count to be of the one kind, and in a second count to be of the other. Whatever course the pleader followed, the general frame of the indictment and of each count would be the same. In outline it would first charge the substantive offense of conspiracy as a conspiracy to do one of the forbidden things. This would be followed by a description of the conspiracy, unfolding the unlawful scheme and its purposes. This would necessarily be historical in treatment, assigning the several defendants to their respective positions, and describing the part each was to play as links in the chain which had been forged.

Inasmuch, however, as a conspiracy even to do a forbidden thing would not be a criminal offense, unless something was done by one or more of the conspirators in furtherance of its purposes, the pleader was required to set forth what was thus done as the overt acts which made the crime complete. It is, to some extent, a diverting interpolation, but a thought obtrudes itself at this point. Procedural law is an important part of our system of laws. There are doctrines of the law relating to it, out of which spring rules of pleading which at least promote the orderly trial of cases. It is well for a pleader to observe all these rules, but there is a temptation presented to those who know them to give them more prominence and a greater value than their real importance warrants. It is easy to raise procedural questions of such difficulty of solution as to submerge the substantive law, the application of which procedural law was designed to promote.

We should not lose sight of the truth that because of this R. S. § 1025 (Comp. St. § 1691), commands the courts to ignore all defects in the form of indictments, unless the departure from the correct form of pleading works an injustice to the defendant. With this injunction in mind, let us give our attention to the criticisms directed against the several indictments under consideration.

1. One is based upon distinctions which belong to the science of

metaphysics, and to the domain of the necessary laws of thought, rather than to the very practical concern of the administration of legal justice. The distinctions made invite us·to an inquiry into the nature of what are commonly called facts. The very interesting, as well as well-phrased and well-expressed, argument addressed to us . dwells upon the distinction between facts and conclusions of fact. It is the same distinction expressed in the phrases "evidentiary facts" and "ultimate·facts" or "ultimate fact findings." The basic distinction is that between fact and truth. We do not deny the soundness of the distinction, nor do we wish to be thought to undervalue its importance as an aid to clear thinking. The words which make up our language, however, and which are used to express thought outside of the schools and for all the common purposes of life, including the framing of indictments, sometimes ignore, or at least do not clearly bring out, the distinction. To say that a man is tall or short is doubtless to express a judgment based upon a comparison. None the less it is a fact known to all that some men are short and some tall.

What really happens is that a truth, which is the subject of a judgment, may be first behind an argument, next incorporated into a theory, and finally, by general acquiescence, be accepted as a fact. Whatever is thus generally accepted as a fact becomes, for all the common purposes of life, a fact. It may be stated as a psychological fact that in this proneness of the human mind to accept as a fact whatever is thus commonly accepted as truth lies the danger to be apprehended from persistent pernicious propaganda. We will not stop to inquire what justification, if any, there may be for criticism of the verbiage of these indictments, contenting ourselves with the observation that this criticism is directed, not against the charging clauses, but against that part which deals wholly with the description of the conspiracy and its purposes, and the share which each of the defendants had therein, and the overt act averments. This leads to an inquiry into the proper functions of these parts of the indictments, and to the second ground of complaint made of them.

2. This second ground of complaint is that the indictments leave the defendants in ignorance of what the real charge is which is made against them. This is a complaint of substance. The proper function of the charging clause is to set forth the charge. There is no fault found with this. It is direct, and defendants knew the charge to be a violation of section 37 of the Criminal Code. It is specific in that it is not open to the objection held to be well made in United States v. Beiner .(D. C.) 275 Fed. 704.

The objection is that what it is which the defendants did which the United States charges to be an unlawful conspiracy is not set forth, so that the defendants can know what the real charge is which they are called upon to meet. If the indictment is in truth open to this complaint, it should be held bad on demurrer. We do not find, however, that it is. The substantial charge is that there was a conspiracy to withdraw liquor from bond, and transport it after it had thus been withdrawn, to sell it for beverage purposes, in defiance of the established policy of the law that this should not be done. The part as-

signed to each defendant in this conspiracy is set forth, and what was done by some of the defendants in furtherance of the conspiracy is set out with particularity. Nothing more than this is required, and we are at a loss to understand how more or fuller information could have been very well given. The verbiage employed might have been for the better or the worse, different from what it is, but the information meant to be given is to be found there. Should, however, a bill of particulars be demanded, the demand will have consideration.

[1] 3. As already noted, a conspiracy is not criminal, under section 37, unless it is a conspiracy to do one of two things. The first set forth is clear enough. The second may not, at first glance, be so clear. Is the second broader than the first, or alike specific? A cursory reading of it might well give the impression that it is specific, and its meaning the purpose of unlawfully depriving the United States of money or other property to which it is entitled. One would expect to find that to do anything which the law forbids had been made a crime. Indeed, it would be a misdemeanor at common law. It may well be, however, that every fraud which might be committed against the United States had not been made a crime in itself. None the less a conspiracy to thus defraud is made an offense by section 37. It thus becomes necessary to inquire what acts, other than specific crimes, it is further made a crime to conspire to do; in other words, what is meant by defrauding the United States? The word "fraud" has so many applied meanings, as used, that it does not lend itself to definition. Its meaning in this act of Congress has, however, been found. It is not limited to the thought of the deprivation of property by the acts of wile or deceit, or to depredations upon property rights, but is broad enough to include any act which interferes with or hampers the United States in the successful prosecution of any policy established by law. U. S. v. Stone et al. (D. C.) 135 Fed. 392.

It is possible, for illustration, that the United States might have prescribed through acts of Congress a system and regulations for the care of intoxicating liquors in bond and their withdrawal for lawful purposes, and have forbidden their withdrawal otherwise, and appointed agents to carry out and enforce these regulations, and yet not have made dereliction of duty on the part of these agents a crime. To enter into a conspiracy with these agents to have them violate their duty is, however, made an offense under section 37, because this would be a conspiracy to defraud the United States, notwithstanding the fact that the United States lost thereby not a dollar in revenue or otherwise. This complaint is closely related to the next one in one respect.

4. The National Prohibition Act (41 Stat. 305) fairly bristles with things forbidden and with things thereby made criminal acts. To charge defendants with a conspiracy to commit an offense against the laws of the United States, without designating it otherwise than by violating this statute, has been held in the case first cited to be bad on demurrer. The offense (among the many possible) must be set forth. A charge, however, of conspiracy to defraud the United States by doing a specific thing which this act forbids cannot be successfully

met by a demurrer, and, as already found, the object of the conspiracy may be properly characterized in one count as the commission of a crime, and in another count as a purpose to defraud.

[2] 5. It has already been pointed out that the theory of the prosecution includes the purpose to have a purchaser for the liquor illicitly to be withdrawn from bond, transported, and sold. Every sale, illicit or lawful, necessarily implies a purchaser. We have not been referred to any law which makes it a crime to participate in an illegal sale as the purchaser. The aim of the Eighteenth Amendment, and of all laws passed for its enforcement, is directed against the traffic in intoxicating liquors, not against their use. There was an obvious reason for this distinction being made clear. In practical effect, ordinarily, of course, the enforcement of the law results in a prevention of use as well as sale. This is, however, in theory, at least, an incidental and accidental result or consequence. From all that can be gathered from any one of these indictments (except one averment), some of these defendants have been guilty of no other act than the purchase of illicit liquor.

It is strenuously urged upon us, on behalf of some of these defendants, that this is the real fact, of which no one connected with the cases entertains a doubt. It is as vigorously asserted that such a purchase is neither made a crime nor prohibited by law, and that all the prohibitions are directed against the seller. We are not called upon now to decide whether, if the trial fact be, as the argument assumes, a case will have been made out against these defendants; all we do decide is that the argument overlooks the explicit averment mentioned that all the defendants (including those who purchased) were parties to the conspiracy to have the forbidden things done. It is, of course, among the possibilities of the trial of the case that this averment cannot be made good by proof, or indeed that these defendants did not so conspire; but we cannot make this fact finding now.

6. Much of what has already been said has a bearing upon the motions to quash which have also been made. These motions are based upon the assertions that a prima facie case was not made out against all, or perhaps any, of the defendants, either before the commissioner or the grand jury. This assertion is in turn based upon the testimony given before the commissioner and the list of witnesses whose names are indorsed upon the indictment, and what is known of what their testimony could be. This court has announced its settled purpose, not merely to secure to defendants their right to a fair trial, but also their other right not to be subjected to the disgrace and expense involved in a public trial on the charge of crime until after a United States commissioner or a grand jury had found there was justification for such trial, or this court had itself allowed the charge to be preferred by information or otherwise. We do not, however, feel called upon, and ordinarily will refuse, to act as an appellate court to review this preliminary finding, by inquiring into the evidence upon which it was based.

Both a United States commissioner and a grand jury have certified to us their judgment that the defendants may properly be put

on trial, and nothing has been shown to induce us to interfere with these findings. The law provides a way to test the question of a prima facie case. It is the right of the defendants to submit themselves to custody and sue out a writ of habeas corpus. There is nothing gained by a review of all the incidents of a preliminary hearing, or of the evidence before a grand jury, and many objections to the introduction of any such practice.

The motion to quash is denied, and the demurrer overruled, with judgment of respondeat ouster.