JOHN E. TENCH, Respondent, *v.* ROBERT R. LAWSON, Appellant.

Second Department, January 14, 1929.

*F. R. Serri,* for the appellant.

*Harold W. Reitman,* for the respondent.

CARSWELL, J. Plaintiff sued defendant for $2,500 in connection with a proposed purchase and sale of certain liquor. He says the defendant made fraudulent representations, with knowledge of their falsity, respecting the liquor; that it had no existence and was not, as represented, upon a certain boat docked at Erie Basin. The defendant claimed that he had no dealings with the plaintiff whatever; that he merely was present when dealings were had

regarding the purchase and sale of liquor, when the negotiations were had between the plaintiff and one Corgan, who is referred to as a truckman.

The trial court submitted to the jury, as questions of fact, whether the defendant had been the one with whom the plaintiff dealt and whether the defendant had defrauded the plaintiff by getting money from him as a part payment on the purchase of liquor when in fact he did not have the liquor to deliver because of the boat not coming in at Erie Basin as he represented it would. The jury resolved these questions in favor of the plaintiff, who has had judgment accordingly.

The appellant claims that the record contains no evidence of a misrepresentation by this defendant, as distinguished from one Corgan, of a character to sustain the verdict, assuming that the transaction was legal. We need not consider that question, as appellant's second contention disposes of this case. It is predicated upon accepting the jury's finding that this was a bootlegging transaction.

The transaction complained of is a stale one. The plaintiff, Tench, says that in July, 1921, he received a request from the defendant, Lawson, to call at his office; that when he did so, on July 10, 1921, Lawson showed Tench a list of liquors which Lawson said were for sale. Tench says that Lawson asked $12,000 for the lot, but finally agreed to sell for $10,000 upon a payment of $2,500 being made as a deposit and upon condition that the balance should be paid when the liquor was " sold." Tench further says that Lawson represented that the liquor was on a boat called the *St. Vincent*, then docked in Erie Basin, and that the liquor was to be delivered the next day. The liquor was not delivered, and frequent demands were made for it or for the return of the money, which were refused. Tench further testified that when he turned over the money, which included a check for $100, he believed the liquor was on the ship *St. Vincent* and that it was at Erie Basin, and it was for that reason that he parted with the money. It appears that the $100 check later was returned to Tench because, as one Corgan testified, a boat captain refused the check at the time Corgan tendered him the check and the cash. Corgan further testified that a man named Coroga had some liquor which he wished to sell for $10,000, and it was this liquor that Tench had been told by Corgan (and not by Lawson) was for sale, and that the $2,500 deposit was made on that form of transaction. Corgan further testified that he told Tench that the liquor was on the *St. Vincent*, which was at pier 8 or 9 North river; that he told Tench that he had his information as to the whereabouts of the liquor from one Coroga; that he had taken the money and check

to Coroga, upon which occasion Coroga gave the check back and Corgan replaced it with $100 in cash. The reason Corgan gives for the liquor not being delivered was that the boat had been sent from the North river up to New Bedford, Mass., that very night and that Coroga promised to have the goods delivered and failed to do so. Lawson's testimony is to like effect.

The respondent, Tench, invokes section 1290 of the Penal Law to justify this action. That section concerns larceny. It has in it a provision that, in a criminal transaction, if a larceny is committed it shall not be a defense that the owner whose property was taken was a party to an illegal purpose, in the course of which his property was taken. That section concerns a criminal prosecution only, and has no application here in this civil action to save it from the principle which controls.

The respondent, Tench, further contends that the transaction in which the plaintiff and the defendant were engaged concerns acts which are *mala prohibita* rather than *mala in se*. Upon that premise he argues that civil relief may not be denied him for a fraud upon him in an illicit liquor transaction by a fellow bootlegger. He claims that as the buyer he was not *in pari delicto*, although he admits that he and Lawson were *participes criminis*. He assumes all acts which are *mala prohibita* may be the basis of civil litigation. This is not the rule. Acts which are *mala prohibita* are in the same class with acts which are *mala in se*, except those within an exception to the general rule. That exception concerns transactions such as usury. It relates to situations, as observed by Lord MANSFIELD, " where contracts or transactions are prohibited by positive statutes, for the sake of protecting one set of men from another set of men; the one, from their situation and condition, being liable to be oppressed or imposed upon by the other; there, the parties are not *in pari delicto;* and in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract." (*Browning* v. *Morris*, 2 Cowp. 790, 792.)

The Federal constitutional provision (18th Amendt.) and the statutes thereunder, prohibiting the sale of liquor except as therein authorized, and transactions in violation thereof, are not within the foregoing exception. They are in the group which is *mala prohibita*, but which is subjected to the same rule as acts which are *mala in se*. That rule denies recourse to the civil courts by parties seeking to redress their grievances respecting such transactions.

The respondent, Tench, argues however, that the Federal acts and constitutional provision concern the seller and impose penalties upon the seller rather than the buyer, and that, therefore, the

plaintiff may not be deemed to be *in pari delicto*. The National Prohibition Act makes it an offense to *possess* intoxicating liquor, except as authorized by the act, which is to be construed liberally to the end that the use of intoxicating liquor as a beverage may be prevented. (National Prohibition Act [41 U. S. Stat. at Large, 308], tit. 2, § 3; U. S. Code, tit. 27, § 12.) Moreover, it may be that a purchaser who is not possessed of a permit to purchase intoxicating liquor may be prosecuted with a seller who does not possess a permit for the sale of intoxicating liquor, for conspiracy to violate the National Prohibition Act. ( *U. S.* v. *Slater*, 278 Fed. 266, 270; *U. S.* v. *Katz*, 271 U. S. 354, 355.) In the case at bar the plaintiff had no permit to buy and the defendant had no permit to sell, both of which the statute requires. (National Prohibition Act [41 U. S. Stat. at Large, 310], tit. 2, § 6; U. S. Code, tit. 27, § 16.)

It is true that Lord MANSFIELD stated what is quoted above in a case where emphasis was laid upon the usury statute having placed no penalty upon the borrower. This latter element is not the sole determinative factor in the later cases. In *Adler* v. *Zimmerman* (233 N. Y. 431, 438) certain individuals had a permit to sell whisky but no permit to buy. The broker of a vendor brought an action against these purchasers upon a check for the purchase price of certain whisky, the balance having been paid in cash and the check having been transferred by the vendor to the broker for his services. A defense was interposed by the purchasers that the sale was in violation of the National Prohibition Act and the regulations thereunder. It was held that the plaintiff could not recover and that the check was void in the hands of the broker to whom the vendor had transferred the check. It was there said: " To recover the purchase price or commissions for putting through the deal, the plaintiff was obliged to prove both a permit to sell and a permit to purchase. This is not the case where a sale of a commodity is legal except in certain instances; it is illegal except as authorized.

" The check sued upon being part of the consideration for an illegal sale under the National Prohibition Act, it is void in the hands of the plaintiff who knew about the transaction and the purpose for which it was given. He cannot recover thereon. *No cause of action can arise out of a transaction made illegal by statute.* Where a statute prohibits altogether the sale of certain goods *not only the agreement for such a sale is invalid* but if the sale is made in violation of law the agreed price cannot be recovered. (3 Williston on Contracts, § 1765; *Staples* v. *Gould*, 9 N. Y. 520; *Peck* v. *Burr*, 10 N. Y. 294; *Goodrich* v. *Houghton*, 134 N. Y. 115;

*Ernst* v. *Crosby*, 140 N. Y. 364; *Newman* v. *Moyers*, 253 U. S. 182.) " (Italics ours.)

In the instant case the agreement, the failure to perform which is the basis of the alleged fraud, is invalid under *Adler* v. *Zimmerman* (*supra*). It cannot, therefore, support a civil action for fraud. The law will leave the parties just where they have placed themselves while engaged in illicit traffic.

Accordingly, the judgment should be reversed upon the law, with costs, and the complaint dismissed, with costs.

LAZANSKY, P. J., RICH, YOUNG and SCUDDER, JJ., concur.

Judgment reversed upon the law, with costs, and complaint dismissed, with costs.