Larkin, J.
On December 28, 1944, plaintiff’s testator was á patient in a hospital. He then owned a 1942 automobile. On that day he delivered to defendant the certificate of registration, having completed the transfer statement on the reverse side of the certificate, by signing it and designating defendant as transferee. Testator, evidently believing death imminent, intended to make to him a gift causa mortis, of the motor vehicle.' Seemingly, possession was given at that time. January 5, 1945, testator died in the hospital, without having revoked the gift February 5, 1945, letters testamentary issued to plaintiff.
In December, 1944, and January, 1945, Ration Order No. 2B, promulgated by the Administrator of Office of Price Administration was in effect, and had been from March 6, 1943, superseding similar orders known as Ration Order. No. 2A, and the new Passenger Automobile Rationing Regulations. Ration Order No. 2B (8 Federal Register 2483, as amd.), as did the previo-]s orders, restricted the transfer of all 1942 automobiles, and those of 1941 driven less than 1,000 miles. It forbade their transfer without the permission of the local board of the Office of Price Administration. While primarily intended to apply to dealers, although the right was recognized of an owner of an automobile coming within its purview, to use same provided he was such an owner on January 1, 1942, nevertheless the order, applied to transfers by individual owners as well as to those by dealers. No one could acquire one of these cars unless he came within the order’s classification of eligibility. Substantially those, only, were eligible transferees who were engaged in a gainful work or occupation *25 related to the war effort or public welfare, and who did not have a serviceable car. As to individuals who owned such cars on January 1, 1942, the order clearly sought to restrict their use to those owners, and prevent same by others who did not require them for essential work.
Motor vehicles of 1942 and those of 1941 driven less than. 1,000 miles were recognized as constituting, then, our best automotive equipment. At the time these ration orders were issued the ultimate need for such cars could not he foreseen. Therefore, to preserve this equipment and to prevent its use by others than the original owners, not engaged in some necessary activity, these ration orders were adopted. The underlying purpose was to enable the Office of Price Administration to know that cars, if they were to be transferred, went only to those engaged in essential work. The order was not concerned with the ownership, itself, of the motor vehicle to any greater extent than required to prevent its use by anyone, other than the person owning it on January 1, 1942, not engaged in an essential work. A careful reading of the various orders and the statements issued, in connection with them, by the Office of "Price Administration will disclose that it was the use which was the primary object of-the orders and not the transfer of title as between two individuals. This is evidenced by sections 2.5 and 2.6 of ¡Ration Order No. 2B. Section 2.5 permitted a dealer, buyer, manufacturer or distributor to acquire a 1942 car, or an interest in it, without a certificate, but he could not use the car or register it for use unless it was registered, with a clearance statement, for official use by or on behalf of the armed forces of the United States. A person who received a car in satisfaction of a security interest could acquire it without a certificate authorizing the transfer. Similarly by section 2.6, a person could acquire a 1942 car by will or inheritance from one who was entitled to the use of the car and that person so acquiring the automobile was permitted to use it.
However, section 4.1 of article 4 provided that no person should transfer or acquire, or offer to transfer or acquire, a 1942 car, or alter, register, use or permit the alteration, registration or use of such a car except ás permitted by the provisions of the order. That section applied regardless of any conflicting private agreement or obligation. Still, as already noted, a dealer, distributor, manufacturer, or one who had taken the car in satisfaction of a security interest, or one acquiring a car by will or inheritance from one entitled to the use of the same *26 car, were coneededly not subject to this prohibition. Section 4.3 of the same article provided that no person should possess, use or permit the use of any 1941 or 1942 car which he obtained in violation of the regulation. Section 4.4, quite important herein, read as follows: “Any person who violates this order may be prohibited from receiving any 1941 or 1942 car, gasoline or tires, or from selling or otherwise disposing of them. The prohibition will be in the form of an administrative suspension order issued in accordance with Procedural Eegulation No. 4. A violator of this order is also subject to the penalties provided for in the Second War Powers Act.” (Italics supplied.)
In section 4.10 transfer is defined as a sale, lease, loan, trade, exchange, gift, delivery, shipment, or any change in possession, control, right, title or interest. This section, again, is important in this litigation because it is on this definition that plaintiff predicates his entire contention that the gift causa mortis of the automobile in question came within the prohibitory provisions of the order.
In April, 1945, defendant, being in possession of the car, the plaintiff demanded it from him. This demand was refused. Plaintiff then began this action in replevin in the City Court of Rochester. In his complaint he sets forth the attempted transfer of ownership by his testator on or about the 28th day of December, 1944, of the automobile in question to the defendant, alleging, therein, that the transfer was in violation of Ration Order No. 2B because the defendant was not the holder of a purchase certificate issued by the Office of Price Administration at the time of receiving the gift. Defendant answered, admitting possession of the automobile, the due appointment of plaintiff, the value of the car and that he had refused plaintiff’s demand for delivery. Otherwise, he put in issue the allegations of the complaint. Thereafter on stipulated facts, the action was submitted to the City Court. This stipulation recites that the decedent, being then the owner and in possession of the automobile, transferred possession of it to defendant, signing and delivering a statement of transfer on the reverse side of the registration certificate, giving it to defendant 'as transferee; that no consideration was asked or received by testator from defendant; that testator, at the time he made the transfer, was a patient in St. Mary’s Hospital, and made it in contemplation of death, intending the automobile as a gift causa mortis; that at the time, defendant was not and never had been a holder of a purchaser’s certificate as required by Ration Order No. 2B, and that the defendant was riot eligible to receive such certificate, *27 liis application for one having been denied. This last fact is explained in defendant’s brief, filed on this appeal. He states therein that he did apply for a certificate which the Ration Board denied pending the outcome of the City Court suit. This explanation is not controverted in plaintiff’s brief herein, nor was it so controverted on the oral argument.
The City Court dismissed the complaint. From its judgment, an appeal was taken to the County Court where it was reversed, and judgment given awarding possession of the car to plaintiff. The parties then entered into a further stipulation reciting that, as defendant intended to appeal from the County Court judgment, and market conditions might then be more favorable for the sale of used cars than would prevail at the time the appeal was determined, it was agreed that the- automobile, subject of the action,' should be sold at the most advantageous price obtainable, the proceeds to be held by plaintiff, pending the determination of the present appeal, upon the understanding that the proceeds should become the subject of the action in place and stead of the automobile. Defendant then appealed to this court. It is stated in his brief, and, again not denied in that of respondent, nor was it denied on the oral argument, that following the foregoing stipulation, the car was sold to defendant by the plaintiff, and that defendant, at the time the cause was argued, then had possession of it.
That the testator was competent, subject to no imposition or duress, intended to give the automobile to defendant, and despite the inadequacy of the'stipulation, in that respect, that unless the transfer was in violation Ration Order No. 2B, the transaction constituted a valid gift causa mortis, seems, from this record, fully conceded by the plaintiff. The sole basis of the decision, both of the City Court and the County Court, was the applicability of Ration- Order No. 2B to the transaction; The City Court held that it did not apply, while the County Court took the opposite view, determining that the gift, by reason of the prohibitory language of Ration Order No. 2B, was ineffectual, so that, neither title nor right'to possession of the automobile vested in defendant. •. - -
In determining the application ■ o-f the 5 Ration Order to this transaction, it of course must be conceded that the order forbade any transfer except in accordance with its provisions, and that in the section defining transfer, a gift was "included. Moreover, it may be conceded that ordinarily all gifts are of two kinds, inter vivos or causa mortis. While all gifts, as between living persons, are in a strict sense inter vivos, still one *28 causa mortis, although technically resembling one inter vivos, presents important distinctions. It is of course necessary to either kind that the donor intend a gift and that there be a complete delivery at the time of the subject matter. Yet a valid gift inter vivos cannot be revoked, while one causa mortis is revocable before death and does not completely vest title until the death of the donor. Gifts causa mortis are essentially, in their nature, testamentary dispositions. (Harris v. Clark, 3 N. Y. 93, 121; Gilkinson v. Third Avenue R. R. Co., 47 App. Div. 472-473.) They might be said to bear some resemblance to the nuncupative wills of. the early common law, still .permitted by section 16 of the Decedent Estate Law, in certain instances. Surely they resemble legacies because other than there must be a delivery before death to constitute a valid gift causa mortis, there is really little else to distinguish them from ordinary testamentary bequests. (Noble v. Garden, 146 Cal. 225, 229; Delmotte v. Taylor, 1 Redf. 417, 423; Matter of Manhardt, 17 App. Div. 1, 9; Jones v. Brown, 34 N. H. 439.) Under the early civil law they were attended with great solemnity and five witnesses were required to establish them. That these gifts, originating in the civil law, and adopted, with some modification, into the common law (Ward v. Turner, 2 Ves. Sen. 431) have always been considered by the courts as, practically, testamentary dispositions (Delmotte v. Taylor, supra) is evident from the fact that the courts have, uniformly, ever been cautious in sustaining them. While their validity has always been recognized by the courts of this State, the books contain many opinions, declaring that, since they are testamentary in character, caution should be observed in sustaining them lest a fraud be perpetrated. Here of course there is no element of fraud or imposition because it is conceded that, unless the ration order made it impossible, there was a valid gift causa mortis of the motor vehicle.
The single question involvéd, on this phase of the litigation, is simply whether the definition of the word “ transfer ” as contained in the order, including as it does, a gift, was really intended to apply to gifts causa mortis. As already noted, if the definition be literally construed, it includes both kinds of gifts.
In the determination of the meaning of gift, as included in the definition of “ transfer ”, one must keep in mind that, by the express terms of the order, this testator, by a codicil to his will, could have left the automobile to defendant, and that bequest would not have been a forbidden transfer. The fact *29 .that the regulation permits a transfer by either testacy or intestacy indicates, quite clearly, that it never was the intention to interfere with the right of one lawfully owning, and entitled to use a 1942 motor vehicle, at his death, from passing on to a relative, or a friend, both the ownership and the right to use that same automobile. Since, as already shown, gifts causa mortis are, from their very nature, essentially testamentary dispositions, it seems hardly logical that the framer of this order, when he included gift as within the definition of transfer, ever.had in mind gifts causa mortis. Rather, it seems more reasonable, what were intended to be prohibited were ordinary gifts inter vivos, only, where possession and title pass at once, and not those where possession, only, passes, and title does not, and cannot pass, until the donor’s death, without revocation prior thereto. Gifts inter vivos, of such chattels as automobiles, are not uncommon. To exempt them, .then, from the operation of the prohibited transfers would interfere with the attainment of the object sought. Moreover such an exemption would provide an easy subterfuge to evade the terms of the order. Not so with a gift causa mortis which ordinarily would be an uncommon method of transfer. Considering the very circumstances in which it is made, it is difficult to believe that it would be often used to evade the order, when it was possible for the donor, either by his will or by a codicil, to make a transfer effective at his death, which would not be prohibited. For the foregoing reasons the determination of the City Court on this phase of the litigation seems permissible, bottomed, as it was, on a logical and reasonable basis.
Moreover, if it be assumed that the provisions of Ration Order No. 2B apply to the instant transaction, still it does not follow that this plaintiff, who stands in the place of the donor and whose right of recovery would only be such as he takes from the donor, can maintain this possessory action, in which he must establish not only his legal title to the automobile, as alleged, but his right to its immediate possession. While it is true that it is commonly said that illegal bargains — the transfer of this automobile as a gift causa mortis, if the provisions of Ration Order No. 2B apply, would fall into the category of an illegal bargain — are void, this statement is not strictly accurate. (5 Williston on Contracts [Rev. ed.], § 1630.) What is really meant is that they are unenforcible. It is important to note that nowhere in the rationing order is there any provision declaring a transfer, in violation of its provisions, void.. On the contrary, by section 4.4 of the order entitled “ Penalties for *30 violations ”, any person violating the order may.be prohibited •• from, receiving any 1941 or 1942 ear, gasoline or tires, or from -sellingor otherwise disposing of. them. The section -provides: further, that the prohibition will be in- the form of', an. administrative suspension order issued in .accordance with Procedural Regulation No. 4. The same section states that any violation of the order is also subject to the penalties provided'by,the Second War Powers Act. .Moreover; if the order applied at all to this transaction, it applied equally to donor and donee, because, section 4.1 specifically provides-that no person shall transfer or acquire, or offer to transfer or acquire a 1942 car, except as permitted by the provisions of the-order.- ,So it.is clear that this order does not expressly declare the transfer void but on the contrary, specifies the penalties (á) fine-and imprisonment, and (b). a suspension order invoked by the administrator. The very reading of section 4.4 indicates that it was contemplated that there would be situations where -there would be completed transfers in contravention of the regulation. In that, event the administrator," in accordance with Procedural Regulation No. 4, was empowered by an administrative suspension order, to deny to the transferee gasoline or tires for the car or the right to sell or dispose of them- and possibly, to nullify the transaction. . However, - that p'owér was lodged in the- adriiinistrator alone. In addition, a willful. violation of. the order was punishable, criminally,as provided in the Second War Powers-Act, 1942- (U. S. Code, tit. 50, Appendix, §.631 et seq.). ■/
It does not always follow that because a transaction is prohibited ór illegal, title as between the parties to the transriction does not pass'from the seller, donor, or transf eror to the vendee, donee or transferee. . (Rosasco Creameries, Inc., v. Cohen, 276 N. Y. 274, 278.) Another decision illustrative of this feature . is Whitfield v. United States (92 U. S.165,169-170).. Whitfield sold cotton to the Confederate States, agreeing to receive in pay-r ' ment,. bonds, of the Confederacy. In Jan’uary, 1865, payment was made and accepted, in bonds. . The .cotton was.,never taken away by the Confederate authorities, butreriiained'in possession ' of Whitfield until September 1,' 1865,, when it was' seized by ' agents ,q.f ¡¡the .United States Treasury, acting under-authority of the Abandoned, and Captured Property Acts. After seizure some . of the cotton-. was. returned to Whitfield, but 118: bales were sold,and tfie .money paid into the Treasury..;.of .the United ' S-tate^, ,-."Whitfield made claim to thesó proceeds, . Mr. Chief Jus* ■ tice Waite, in an opinion, in:which all the other members of the *31 court concurred,. stated: We have, thus decided that the Confederate States government could acquire title to real property by purchase; and it is not easy to see why a different-rule .should be applied to personal property. The ownership of that, even more than real property, was required for the operations of the Confederacy. Contracts of sale made in aid of the rebellion will not be enforced by.the courts; but completed sales occupy a different position. As a general rule, the law leaves the parties to illegal contracts where it finds them, and affords relief to neither. A sale of personal property, when completed, transfers to the purchaser the title to the property sold.” On the ground that Whitfield was not the owner of the cotton, he was denied recovery .because, although the sale itself was an illegal one, contrary to public policy, still it had been completed so that Whitfield had parted with title to the cotton.. Here, • although the Ration Order forbade the transfer, it was not declared void, but on the contrary, the order itself seems to have recognized that transfers would be made despite the prohibition of the regulation. While the parties-, to this gift, donor and donee, violated the provisions of the order, and while the defendant, as the survivor of the transaction, might be subject to' criminal penalties if thé violation was willful, and did subject himself to the possibilty of a suspension order by the administrator, it does not follow that, as between the parties, this gift, having-been completed, did not operate to vest in the donee all of the donor’s title;. Taking that view of the situation, this plaintiff, succeeding'to" such title,' only, as was left in the donor, would have no standing to maintain- this action of -replevin in which his. title' and right to immediate possession are pleaded as essential elements. " - '
. Finally — again, on the assumption that Ration Order No. 2B applied- to this donation — although the specific' objection was not raised either in the City or County Court, or on this appeal, still there appears to be another insuperable obstacle to plaintiff’s recovery. As already shown by the citation: to Williston, really, what is. meant when .transfers or bargains, such as this óñé, are said to be void because prohibited by statute, is that they' aré unenforeible. The gift of this automobile was not in itself, a wrongful act. It only became so because it was prohibited' by a regulation1 Of the..Office of Price Administration. Where such' ah illegal transaction-has been consummated,- if the parties-are in pari'd'elitMfj 'defendant-is in the stronger-position and public policy forbids1,''hM'éfi' subh■ circumstances,- the. granting of relief to either party:'1 If, instead of a gift, this had been *32 a sale by testator to defendant in violation of the order, and had defendant, as plaintiff, sought to rescind the transaction in an action against decedent’s estate, he could not have succeeded because his claim would have been predicated on an illegal transaction. Plaintiff, herein, as the basis of his cause of action, pleads the illegality of the gift. Provided' the construction of the stipulation already noted, herein, is permissible, there is nothing in the stipulated facts indicating that- the violation of the Ration Order by donor and donee was not equal. However the transaction having become complete, the usual rule applies. The courts will not grant relief to either. The underlying basis of this rule is that it tends to discourage violations.
It is perfectly evident that plaintiff could not succeed in this action without establishing the violation, by his testator, of the Ration Order. Indeed that is the sole basis upon which he asserts any right to recover the motor vehicle. Since defendant was in possession, plaintiff, to establish his title, was obliged to introduce evidence to overcome the presumption of ownership arising from that possession. Such evidence was the gift in violation of Ration Order No. 2B set forth in the stipulated facts and as pleaded in the complaint. His case, of necessity, then fell (Kinney v. McDermot, 55 Iowa 674), just as did plaintiff’s case in Marks v. Childs (June 19, 1944), Appellate Department, Superior Court of Los Angeles County, California, cited in respondent’s brief. There, Mrs. Marks could not establish her title to the automobile without showing the illegal transfer. When a cause of action is predicated on an illegal transaction, or where one must trace his cause to such a transaction, there can be no recovery. (Adler v. Zimmerman, 233 N. Y. 431; Tench v. Lawson, 225 App. Div. 198, 200; DiTomasso v. Loverro, 250 App. Div. 206, 208, 209; O’Connor v. O’Connor, 263 App. Div. 820, affd. 288 N. Y. 579; 2 Restatement, Contracts, § 598; Restatement, Restitution, § 141.)
Nothing in this record discloses any exception to the rule. Sometimes the rule does not apply where public policy requires a rescission to prevent public injury. Since the primary object of these rationing orders was to preserve this equipment as far as it could be done, looking to a possible time when its use would be sorely needed, it is difficult to see how that object would be promoted by annulling this gift. The administrator, by a suspension order, could actually “ freeze ” this car in donee’s possession, preventing either a sale or use of it. Certainly that would be an effective way to preserve this 1942 automotive equip *33 ment. Not so in the hands of the executor, for he could sell it, and his vendee could use it.
Nor does it appear that either was less culpable than the other. This regulation has the force of a statute. Nothing herein indicates that both did not know of this regulation. They are presumed to know it, at least until the contrary is shown in some manner.
Again, no exeeeption to the rule can be predicated on the thought that unnecessary hardship will be imposed upon the decedent’s estate, and defendant unjustly enriched, unless plaintiff is permitted to succeed. No claim is made but that decedent was fully competent, was not imposed, upon, and actually wished the defendant to become the owner of this car upon the donor’s death.
Nor does the fact that this defense was not pleaded preclude its consideration. (Doucet v. Massachusetts Bonding & Insurance Co., 180 App. Div. 599, 603.) Whére the illegality appears-plainly and the transaction is contrary to public policy, the court may, of its own motion, take notice of it (Dyer v. Broadway Central Bank, 225 App. Div. 366, 367), and may consider it for the first time on appeal (Equity Service Corporation v. Agull, 250 App. Div. 96, 99).
For the foregoing reasons the judgment of the County Court should be reversed and that of the City Court affirmed, with costs to the appellant, payable out of the estate.
All concur. Present — Tatlor, P. J., Dowling, McCurn, Larkin, and Love, JJ.
Judgment of Monroe County Court reversed on the law and judgment of the Rochester City Court affirmed, with costs in this Court and in the Monroe County Court to the appellant, payable-out- of the estate.