OPINION OF THE COURT
Theodore A. Kelly, J.
Defendant moves for summary judgment on the ground that the cause of action alleged in plaintiff’s complaint is without merit and must be dismissed. Plaintiff cross-moves for summary judgment in the sum of $90,503.58.
At issue is the interpretation and effect to be accorded a stipulation between plaintiff and defendant, a religious corporation, which settled and compromised litigation initiated by defendant in 1971. The litigation was in the form of a CPLR article 78 proceeding to reverse and annul a determination by the Zoning Board of Appeals of the Village of Upper Nyack, denying defendant’s request for a special permit to erect a building on certain real property owned by it in the village. *416 Defendant proposed to use the building as its international headquarters and administrative offices. The Board’s decision was subsequently annulled and the matter was remanded to the Board for further findings.
Following a second public hearing on the matter, the Board again denied defendant’s application. The Board’s decision was based upon the fact that the Village Board had adopted a resolution prohibiting the issuance of special permits and building permits for buildings requiring new sewer connections until the Town of Orangetown sewer trunk line had been constructed. The Zoning Board concluded that the Village Board resolution deprived it of jurisdiction to issue a special permit.
Defendant commenced another article 78 proceeding to annul the second determination. It also commenced an action for a declaratory judgment challenging the village zoning ordinance and the Village Board resolution imposing the moratorium. Defendant prevailed in the proceeding, and the Zoning Board was directed to issue a special permit.
The village appealed to the Appellate Division, Second Department. While the appeal was pending, the parties entered into negotiations to settle their differences. The negotiations culminated in an agreement that was embodied in correspondence between the parties’ former attorneys.
In a letter dated May 25, 1971 to Lynne Warren, Esq., the former Village Attorney, defendant’s attorney stated the following: "our client has authorized us to declare to you its conditional intention to presently pay to the Village sums equal to the amounts which it would be required to pay as taxes upon the value of its land as unimproved land were it not tax exempt and, upon the granting of a certificate of occupancy for its proposed building, sums equal to the amount it would be required to pay as taxes upon the value of its improved property were it not tax exempt. Our client intends to make these payments indefinitely, however, it may want to review its determination in this regard at five year intervals following the granting of the aforesaid certificate of occupancy. If it does so want to review its determination, it will, prior to the termination of each five year period, request a conference with the Board of Trustees of the Village at which the matter will be discussed.”
In his answering letter of June 22, 1971, Mr. Warren responded as follows:
*417 "This replies to your letter of May 25, 1971, signed by Daren A. Rathkopf, Esq. The Board of Trustees of the Village of Upper Nyack, N.Y., the Zoning Board of Appeals, and the Zoning and Building Inspector have authorized me to advise you that they are in accord with the proposals of the Christian and Missionary Alliance, as expressed in said letter, with the following amendments, additions and clarifications * * *
"4. In view of the wide divergence of interpretation of the Village’s Zoning Ordinance and other laws, between the Alliance on the one hand, and the Village and its administrative officials, on the other, it is hoped that this compromise and settlement will avoid expensive and lengthy litigation and be otherwise beneficial to the citizens of Upper Nyack, particularly in view of the fact that the Alliance, although claiming tax exemption as a religious organization under New York law, proposes to carry its proper share of the Village’s expenses as though it were a non-tax-exempt entity. It is understood, of course, that in the event the Alliance’s property in its present and improved state, is no longer used for religious purposes, it will be thereupon placed upon the Village tax rolls.
"5. In view of the various steps contemplated, this agreement shall become effective insofar as the obligation of the Alliance to make payments in lieu of taxes is concerned upon the happening of all of the following:
"(a) Adoption of resolutions by the Zoning Board of Appeals granting a Special Permit and the variances described in paragraph 2 above.
"(b) Withdrawal of the pending appeal by the Zoning Board of Appeals to the Appellate Division in the No. 4486/70 action, and a stipulation by us that the judgment therein entered March 9, 1971 is satisfied.
"(c) Waiver of the moratorium on permits, and issuance of a Zoning and Special Permit, to the Alliance for its proposed building.”
On June 25, 1971 defendant’s attorney returned a copy of the above letter "which has been accepted by us as attorneys for The Christian and Missionary Alliance” to Mr. Warren. A special permit and a parking variance were then granted, and the moratorium on the issuance of special permits and building permits for defendant’s headquarters was waived. The building was then constructed and has been in use by defendant since that time.
*418 The stipulation was apparently performed by defendant until July 9, 1981 when its vice-president/finance treasurer, Merlin C. Feather, requested a meeting with the Board of Trustees to review defendant’s prior determination to make payments to the village in lieu of taxes. A conference was held on September 29, 1981. On June 29, 1982 Mr. Feather forwarded a check for $5,000 to the village as a contribution in lieu of taxes. In his covering letter to Mayor George Cardona, Mr. Feather referred to the September 29 meeting and stated the following: "At the conclusion of that conference we were advised that some resolution could be expected in early January. Repeated contacts with your office have been unsuccessful and to date we have had no word from you indicating what donation would be acceptable to the Village. Since we wish to honor the July 1 due date for the normal payment of taxes, we are enclosing our contribution, hoping that it adequately covers the service provided us by the Village of Upper Nyack.”
On July 16, 1982 Mayor Cardona returned the check to Mr. Feather. In his cover letter, the Mayor characterized defendant’s $5,000 payment as a unilateral attempt to repudiate the agreement to pay its share of village expenses in lieu of taxes. Specific reference was made to Mr. Warren’s letter of June 22, 1971 wherein he had stated that "the Alliance, although claiming tax exemption as a religious organization under New York law, proposes to carry its proper share of the Village’s expenses as though it were a non-tax-exempt entity”, it being understood that "in the event that Alliance’s property in its present and improved state, is no longer used for religious purposes, it will be thereupon placed upon the village tax rolls.” The Mayor demanded that defendant pay $11,751.20 under the stipulation of settlement. Defendant objected on the ground that $11,751.20 was grossly disproportionate to the village’s expense in having defendant’s headquarters located within the village boundaries. Defendant again tendered the $5,000 check. That check has never been negotiated.
The village now sues to recover the sum of $90,503.58, representing alleged delinquent payments in lieu of taxes. Defendant alleges that the correspondence between its attorneys and Mr. Warren did not constitute a binding contract and was, at best, a nonbinding statement of intent. If the letters are to be construed as constituting a contract, defendant then contends that the contract is void and unenforce *419 able for the following reasons: (1) that a contract made with municipal officials for the purpose of influencing their discretion is against public policy even though the contract may inure to the benefit of the public; (2) that a contract by a religious organization to pay money in lieu of taxes violates the public policy of the State which exempts religious institutions from taxation; (3) that the contract is unenforceable against defendant for lack of consideration; and (4) that the alleged agreement gave defendant the right to review its determination to make voluntary payments to the village at intervals of five years, and that defendant complied with this procedure.
The court cannot accept defendant’s contention that the correspondence in question was nothing more than a statement of its intention as set forth therein. A compromise or settlement is an agreement or an arrangement by which, in consideration of mutual concessions, a controversy is terminated (19 NY Jur 2d, Compromise, Accord and Release, § 27). Its effect is to substitute the mutual promises contained in that agreement for the obligations contained in, or arising out of, the subject matter of the controversy (Gaffey v St. Paul Fire & Mar. Ins. Co., 221 NY 113).
A compromise or settlement, like other contracts, must be supported by consideration (19 NY Jur 2d, Compromise, Accord and Release, § 38). A benefit to a promisor or a detriment to the promisee is sufficient consideration for a contract (21 NY Jur 2d, Contracts, § 77), and the promise of a party to discontinue an action or to forbear bringing an action against another party furnishes sufficient consideration for the promise of the other party to pay the consideration agreed upon in the settlement (Gaston & Co. v Storch, 253 NY 68).
Plaintiff and defendant clearly intended to settle and compromise their ongoing litigation when they entered into the settlement agreement. Plaintiff withdrew its appeal, issued the requested special permit and parking variance to defendant and waived the moratorium on the issuance of building permits, thereby permitting defendant to construct its building. In return, defendant agreed to subject itself to taxation by plaintiff in the same manner as if it were not exempt. The settlement, therefore, could not be characterized as a nonbinding statement of defendant’s intentions. While defendant was entitled to review its decision to make payments to plaintiff in lieu of taxes at the end of five years that fact, standing alone, did not make the agreement void for lack of definiteness. *420 While defendant could request a meeting with the village, there was nothing in the agreement to indicate that the village was obligated to reduce the payments. As a practical matter defendant’s former attorney, in his letter of May 25, 1971, stated that defendant "intends to make these payments indefinitely.” Hence, there was nothing indefinite or uncertain about the liability that defendant assumed. Moreover, defendant performed the agreement according to its term for 10 years. Therefore, its present claim that the subject correspondence was only a statement of intent regarding its decision to make the payments in lieu of taxes to plaintiff is disingenuous and lacks substance.
I also reject defendant’s claim that the agreement is unenforceable because its purpose was to unlawfully influence the discretion with which the members of a Village Board are vested. Agreements by which the public powers of a municipality are surrendered without express permission of the Legislature are beyond the powers of the municipality and are void (Parfitt v Ferguson, 159 NY 111; Atlantic Beach Prop. Owners’ Assn. v Town of Hempstead, 3 NY2d 434). However, a municipal corporation, having the power to sue and be sued, also has the power to terminate litigation in which it is engaged, including the power to discontinue the action, upon terms or otherwise, and to agree upon the terms (40 NY Jur, Municipal Corporations, § 1052; 17 McQuillin, Municipal Corporations § 48.17 [3d ed rev]). The village, therefore, had the authority to settle its litigation with defendant, and the settlement did not require any Board members to surrender or transfer any powers properly exercisable by them to any other person. Nor did it purport to unlawfully influence them in the exercise of their discretion. The decision to terminate or to continue the litigation was one that the village, acting through its representatives, had the power to make.
The sole issue remaining is whether the settlement agreement is unenforceable because it is violative of the public policy of the State of New York. Resolution of this issue requires examination of the consideration received by plaintiff from defendant, and whether that consideration tainted the agreement in a manner sufficient to now excuse defendant from further performing it. The issue is further clouded by the fact that defendant, which now seeks to avoid the agreement, has received the full benefit of its bargain with plaintiff.
All real property in the State of New York is subject to taxation unless exempt therefrom by statute (Real Property *421 Tax Law § 300). Real property owned by a corporation organized exclusively for religious purposes, and used exclusively for carrying out such purpose is exempt from taxation (Real Property Tax Law § 420-a [1] [a]). The State has thus declared a policy that churches and schools are more important than local taxes, and that it is in the furtherance of the general welfare to exclude such institutions from taxation (Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 524).
Parties may ordinarily incorporate into their agreements any provisions that are not illegal or violative of public policy, but the general right to contract is subject to the limitation that the agreement must not be in violation of the Federal or State Constitutions, Federal or State statutes, an ordinance of a city or town, or a rule of the common law (21 NY Jur 2d, Contracts, § 137). Any act, promise or agreement designed or intended to accomplish the furtherance or effectuation of an unlawful purpose is unlawful, and every such promise or agreement is void and unenforceable (Dodge v Richmond, 10 AD2d 4, affd 8 NY2d 829).
A contract’s illegality may lie in its consideration (21 NY Jur 2d, Contracts, § 138), an illegal consideration consisting of any act or forbearance, or a promise to act or forbear, which is contrary to law or public policy (21 NY Jur 2d, Contracts, § 139). The term "public policy” has been defined as the principle which declares that no one can lawfully do that which has a tendency to be injurious to or against the public good will or welfare (Johnston v Fargo, 184 NY 379). The principle that contracts against public policy are void and unenforceable is not based upon any desire to relieve a party from the obligation which he has assumed, but rather is based upon the theory that such an agreement is injurious to the interests of society in general, and that the only way to stop the making of such contracts is to refuse to enforce them, leaving the parties without a remedy for a breach thereof (McCall v Frampton, 99 Misc 2d 159, 167, mod on other grounds 81 AD2d 607).
Plaintiffs attorneys maintain that the settlement agreement should be enforced according to its terms because defendant had the right to waive its tax-exempt status, provided that the agreement was made in exchange for lawful consideration obtained from plaintiff. Given the fact that defendant, as above stated, has obtained the benefit of the settlement agreement, this argument has a superficial appeal. However, the policy of this State has always been to encourage, foster, and *422 protect religious institutions, because the religious and moral culture afforded by them were deemed beneficial to the public and necessary to the advancement of civilization and the promotion of the welfare of society. Consequently, those institutions have been relieved from the burden of taxation by statutory exemption (People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d 350, 357).
The settlement agreement does not allow the construction and interpretation that plaintiff would have the court adopt. Rather, the correspondence reflects defendant’s insistence that it was tax exempt and plaintiff’s recognition of that fact. In his letter of May 25,1971, defendant’s former attorney announced defendant’s "conditional intention” to pay the village a sum equal to the sum it would be required to pay on the value of its land "were it not tax exempt.” In his answering letter of June 22, 1971, the former Village Attorney acknowledged the fact that defendant claimed to be exempt from taxation, and stated that its property would be placed on the village tax rolls in the event that it "is no longer used for religious purposes.” It is clear, therefore, that both parties realized that defendant’s property was tax exempt. Accordingly, by accepting defendant’s offer to make payments in lieu of taxes, plaintiff indirectly subjected defendant’s property to taxation. Plaintiff’s action violated section 420-a of the Real Property Tax Law and contravened the public policy of the State of New York as expressed in that legislation. The agreement, therefore, is void and unenforceable by plaintiff against defendant.
Accordingly, defendant’s motion for summary judgment is granted and the complaint is dismissed, with costs. Plaintiff’s cross motion for summary judgment is denied.