**NATIONAL SCHOOL REPORTING SERVICES, INC., Plaintiff,**

v.

**NATIONAL SCHOOLS OF CALIFORNIA, LTD., (a/k/a National Schools of California, L.P.), Jan Anton and Greg Lawlor, Defendants.**

**No. 95 Civil 9752 (DAB).**

United States District Court, S.D. New York.

June 27, 1997.

---

7.   Once again, Defendants have not come forward with any evidence of independent creation.

Kupfer, Rosen & Herz, LLP, New York City, (Lawrence S. Rosen, of counsel), for Plaintiff.

Dicaro, Lacey & Nield, San Diego, CA, (Brian H. Erikson of counsel), for Defendants.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff, National School Reporting Services, Inc. ("NSRS") compiles and sells information that can be used by potential home buyers to compare different school districts. Defendants Jan Anton ("Anton") and Greg Lawlor ("Lawlor"), are the general partners of Defendant National Schools of California, Ltd., ("NSC"), which contracted with the Plaintiff for the exclusive provision of the Plaintiff's services in California. Plaintiff brought this action for summary judgment to seek damages under a promissory note and two guarantees signed by the Defendants.

## I. BACKGROUND

Plaintiff is a New York corporation. (Rosen Aff. Ex. G.) It is in the business of

compiling and selling information that can be used by would-be home buyers to compare school districts. (*Id.* Ex. J ¶ 2.) The information is stored in a computer database. (*Id.*) Real estate agents and agencies subscribe to the Plaintiff annually for an unlimited number of school reports. (*Id.*) In 1993, Anton and Lawlor met Neil Rosen, president of the Plaintiff, and offered to buy the Plaintiff by purchasing all its stock. (*Id.* Ex. J ¶¶ 4–5.) Negotiations to buy the stock broke down when Anton and Lawlor could not meet the purchase price and had a different marketing plan than the Plaintiff. (*Id.*) Alternatively, Anton and Lawlor investigated obtaining the exclusive right to market the Plaintiff's service in California. (*Id.* Ex. J ¶ 7.)

On March 15, 1994, Defendant NSC entered into an agreement with the Plaintiff entitled the "Exclusive Rights and License Agreement" ("License Agreement"). (*Id.* Ex. G.) Lawlor signed a Promissory Note ("Note") on behalf of NSC. (*Id.* Ex. E.) On September 15, 1994, Defendant defaulted on the Note. (*Id.* Ex. J ¶ 17.) Defendant sent a letter dated September 15, 1994, to the Plaintiff's attorney, threatening suit, based on the Plaintiff's violation of California franchise laws, if the Plaintiff did not act in good faith in settling differences between the parties. (*Id.* Ex. Q.) On December 13, 1994, in exchange for more time to develop its marketing strategy and its product, NSC entered into a Forbearance Agreement with NSRS, (id. Ex. K), and on the following day, Anton and Lawlor signed personal guarantees ("Guarantees"). The Defendants failed to make any of the payments pursuant to the original Note or the subsequent Guarantees. (Defs.' 3(g) Stmt. ¶ 1.)

Sometime after August 8, 1995, NSC sued Plaintiff in the Superior Court of the State of California, County of San Diego, which case was removed to the Southern District of California, alleging that the Licensing Agreement was a franchise agreement. NSC moved for summary judgement, which motion was denied.[1]

On October 27, 1995, Plaintiff sued Defendants in New York County Supreme Court seeking to collect on the Note and Guarantees. NSC removed to this Court and moved to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, which was denied. The Plaintiff now moves for summary judgment seeking enforcement of the Note and Guarantees.

## II. DISCUSSION

The principles applicable to summary judgment are familiar and well-settled. Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir. 1988). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

As a general rule, all ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. *LaFond v. General Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir.1995). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. LILC*, 933 F.2d 187, 191 (2d Cir.1991).

The Plaintiff contends that the Note and Guarantees are valid and enforceable. The Defendants do not dispute that the Note and Guarantees were executed and that there

---

1. The case is still pending in California regarding this issue in addition to the issue of whether the franchise agreement was obtained fraudulently.

was subsequent non-payment by the Defendants. Instead, they argue that the License Agreement is a franchise agreement, which requires Plaintiff to register the franchise pursuant to California franchise law. Plaintiff has not registered the alleged franchise. Thus the Defendants claim, the Note, signed contemporaneously with the License Agreement, is unlawful, and the guarantors are not liable, because the principal obligor, *NSC*, is not liable.

■ Putting aside the determination of whether the agreement is a license or a franchise agreement, and assuming for the moment that the License Agreement is what it says it is—a license agreement, the Defendants have raised no argument, nor any material fact, that would dispute the validity or enforceability of the Note or Guarantees. (Defs.' 3(g) Stmt. ¶¶ 2–3.) Accordingly, on this basis, the Court would have to render summary judgement in Plaintiff's favor.

Assuming arguendo, that the Defendants are correct in their assertion that the License Agreement is a franchise agreement, the proposed link between the unenforceability of the underlying franchise agreement and the Note and Guarantees is a tenuous one. The Defendants argue, citing *Village of Upper Nyack v. Christian and Missionary Alliance,* 143 Misc.2d 414, 540 N.Y.S.2d 125 (Sup.Ct.1988), *aff'd,* 155 A.D.2d 530, 547 N.Y.S.2d 388 (2d Dept.1989), that any act, promise or agreement intended to accomplish the furtherance of an unlawful purpose is unlawful and thus unenforceable. From this, the Defendants reason that the Note and Guarantees are unlawful and unenforceable because the underlying agreement is unlawful. However, if the License Agreement were found to be a franchise agreement, it does not follow that it has an unlawful pur-

pose—in fact, contracting a franchise is completely lawful. The alleged unlawfulness is found in the Plaintiff's failure to meet the procedural requirement of franchise registration, not in its purpose. Accordingly, the Defendants' argument fails on its face.

■ The Defendants also argue that recision of the alleged franchise agreement is warranted and therefore payment on the subsequent Note and Guarantees is not required. (Defs.' 3(g) Stmt. ¶ 2.) However, where a franchisee has gained knowledge that a franchise agreement is potentially unlawful, but does not rescind the agreement at the time of gaining that knowledge and continues with the "franchise" relationship, they are estopped from rescinding the franchise agreement. *See Fargo Biltmore Motor Hotel Corp. v. Best Western Int'l, Inc.,* 742 F.2d 459 (8th Cir.1984)[2] (the court found that the plaintiff had taken advantage of the defendant's services for several months, after the plaintiff actively determined that the defendant was infringing the franchise law and thus plaintiff was estopped from rescinding the agreement); *Two Men and a Truck/Int'l Inc. v. Two Men and a Truck/Kalamazoo, Inc.,* 949 F.Supp. 500 (W.D.Mich.1996). Here, the letter from Robert Reed ("Reed"), Defendants' prior counsel, (Rosen Aff. Ex. Q), as well as Reed's research regarding this matter, (Reed Dep. at 15–16), shows that the Defendants knew of the alleged infringement of California franchise law several months before signing the Forbearance Agreement and the Guarantees. If the Defendants wanted to rescind the License Agreement they should have done so at the time of the discovery of the possible franchise violation, and declined to enter into the Forbearance Agreement and subsequent Guarantees.[3] Instead the Defendants requested more time from the Plaintiff in order to test their mar-

---

2. The plaintiff in *Fargo* was a franchisee of the defendant, Best Western, a well-known hotel chain. The plaintiff's attorney contacted the North Dakota Securities Commission ("Commission") to determine if the defendant was registered to sell franchises in North Dakota, which the Commission determined it was not. Instead of rescinding the agreement when the Commission determined that the defendant was acting unlawfully, the plaintiff stopped paying for the services provided by Best Western, but continued to benefit from the services for several months.

3. Furthermore, the original License Agreement states that the "Licensee waives all claims of any type whatsoever against Licensor, it[s] affiliates, officers, directors, shareholders, employees and agents in connection with any claim, proceeding or suit relating to breach of warranty (except in connection with any specific warranty made by Licensor in this Agreement) or under any franchise or similar law." (Rosen Aff. Ex. G at 22.) This paragraph should have compelled the Defendants first, not to sign the agreement, and second, at a minimum, to rescind the agreement

keting plan and continued to benefit from the information in the Plaintiff's computer database and the Plaintiff's name and network, for eleven months after determining the Plaintiff was possibly in violation of the California franchise laws. Accordingly, the Court finds the Defendants are estopped from any attempt to rescind the alleged franchise agreement. Because the Defendants are estopped from rescinding the underlying agreement, the Note and subsequent Guarantees remain valid and enforceable.

■ The Guarantees are binding upon the Defendants Lawlor and Anton. Where a contract is unambiguous,[4] its interpretation can be determined as a matter of law. *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 426, 429 (2d Cir.1992); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *Alternative Thinking Sys., Inc. v. Simon & Schuster, Inc.,* 853 F.Supp. 791, 795 (S.D.N.Y.1994). Only when the contract is ambiguous, and after considering extrinsic evidence which leads the court to conclude that there is more than one plausible interpretation that can be drawn, does a question of fact exist. *Seiden,* 959 F.2d at 428; *Rothenberg,* 755 F.2d at 1019; *Alternative Thinking,* 853 F.Supp. at 795. "[T]he objective of contract interpretation is to give effect to the expressed intention of the parties." *Rothenberg,* 755 F.2d at 1019; *Seiden,* 959 F.2d at 428; *Alternative Thinking,* 853 F.Supp. at 795. The plain language of the Guarantees support the view that Defendants Lawlor and Anton waived all their

defenses—" ... the undersigned guarantees without deduction by reason of set-off, defense, or counterclaim of any party. the due performance of all of [NSC's] obligations." (Rosen Aff. Ex. K at 1.) Therefore the Guarantees are enforceable against Defendants Lawlor and Anton. *See also Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985).[5]

### III. CONCLUSION

Plaintiff's motion for summary judgment for enforcement of the Note and Guarantees is GRANTED.

SO ORDERED.

---

once they concluded that they had a franchise and not a license agreement.

4. "[L]anguage is not ambiguous when it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion.'" *Seiden,* 959 F.2d at 428 (quoting *Hunt Ltd. v. Lifschultz Fast Freight,* Inc., 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978))). Ambiguous language is capable of more than one interpretation by a reasonably intelligent person who has viewed the entire contract objectively and who is knowledgeable about the customs, contract and terminology of the trade or business. *Seiden,* 959 F.2d at 428. A contract is not made ambiguous because each party urges a different interpretation. *Id.*

5. In addition, the *Citibank* court found that the defendants could not sign a guarantee which stated in plain language the unconditionality of their obligation, knowing that the plaintiff had acted fraudulently and then attempt to use fraud as the basis for attacking the validity of the Guarantee. "To permit this, the Court would in effect condone the Defendants' own fraud in 'deliberately misrepresenting their true intention.'" Here, the Defendants knew before the signing of the Forbearance Agreement that the License Agreement was possibly an unlawful franchise agreement pursuant to California law. (Rosen Aff. Ex. Q.) Therefore, the Defendants cannot now claim that the Forbearance Agreement and the Guarantees are unenforceable based on an allegedly fraudulently induced License Agreement, when they knew that the underlying agreement may be unlawful.