SAMUEL MARKOWITZ, Respondent, *v.* ARROW CONSTRUC-
TION COMPANY, INC., Appellant.

(Supreme Court, Appellate Term, First Department, February,
1918.)

Brokers — when commissions cannot be recovered — lease — city of New
York — Laws of 1916, chap. 497.

> A block in the city of New York containing an abandoned
> church building having been restricted to residential use by a
> resolution of the board of estimate and apportionment pur-
> suant to chapter 497 of the Laws of 1916, a broker who pro-
> cured a lessee who was ready, able and willing to hire said
> building for use as a garage cannot recover commissions from
> the owner who refused to make such a lease on the ground that
> so to do would be an illegal act.

APPEAL by the defendant from a judgment of the
City Court of the city of New York, entered upon the
verdict of a jury, in favor of the plaintiff, for the sum
of $2,030.63, and from an order denying a motion for
a new trial.

Lachman & Goldsmith (Samson Lachman and Theo-
dore Baumeister, of counsel), for appellant.

Strasbourger & Schallek (Max L. Schallek, of coun-
sel), for respondent.

MULLAN, J. It is undisputed that the plaintiff,
employed in June, 1916, as the broker, procured, in
September, 1916, a lessee who was ready, able and
willing to hire an abandoned church building owned by
the defendant, and situate in the borough of Manhat-
tan, for use as a garage, the defendant to alter the
premises to permit of such use; that the minds of the
proposed lessee and defendant met upon all the essen-
tial terms of the hiring; that under the building zone

resolution, adopted by the board of estimate and apportionment on July 25, 1916, and the accompanying map which was a part of it, dividing the city into different "use districts," the block containing the premises in question was restricted to residential use, and that the premises could not, therefore, be put to the use for which they were to be leased; that the question of the legality of the proposed use was not raised until after the parties had reached their agreement for the lease; that while the proposed lessee was waiting to be asked to execute the lease, which was to have been drawn by the defendant, the latter notified him that the matter could not be proceeded with because of the zoning resolution; that the proposed lessee thereupon insisted that the lease be executed, and that it contain a provision permitting the lessee to use the premises as a garage, and the defendant answered that it would make the lease but not for garage purposes, as to do so would be to commit an illegal act; and that as the only purpose for which the plaintiff's client desired the possession of the premises was to use them as a garage, the negotiations came to an end; whereupon the broker brought this action for his commission.

By virtue of chapter 497 of the Laws of 1916, the legislature, as an exercise of the police power, conferred upon the board of estimate and apportionment of the city of New York the right to regulate the height of buildings, to regulate and restrict the location of trades, industries and residential neighborhoods, and generally to divide the city into districts devoted to uses deemed suitable for such localities. The resolution of the board of estimate and apportionment of July 25, 1916, referred to, was passed pursuant to the authority so vested in that body; and the constitutionality of both statute and resolution is expressly conceded for all the purposes of this case.

Appellate Term, First Department, February, 1918. [Vol. 102.

We think the complaint should have been dismissed. To use, or permit the use of, or agree to permit the use of, the premises for the sole purpose for which they were to be hired, and to permit of which use they were to be altered as a condition of the hiring, would have been to commit a proscribed and unlawful act; and any act, promise or agreement designed or intended to accomplish the furtherance or effectuation of the unlawful purpose was unlawful, and every such promise or agreement was void and unenforcible. Respondent's counsel argues for a distinction between acts that are *mala in se* and those that are *mala prohibita,* but we find no authority for his contention. Indeed, the very commonest, perhaps, of all illegal contracts are those had for usury in which, by universal admission, there is nothing inherently immoral; and could it be seriously argued that a broker who procured a lender for a loan that was on its face, or to the knowledge of the broker, usurious, would be entitled to a brokerage commission?

It is also argued on behalf of the respondent that the proofs show that the ·defendant knew of the zoning resolution, and that the plaintiff and his client did not. But whatever might otherwise be made of that point must be seen to be without any value when it is borne in mind that all persons must be deemed to have known of the resolution. A city ordinance is presumed to be known, and no one can be heard to say he was ignorant of it; and there can be no doubt that the resolution in question, passed by the local governing board that was designated by the legislature as the law-making body under the statute, for all the purposes of the statute, is entitled at the least to an equal degree of presumption of knowledge of its existence as is possessed by an ordinance passed by the board of aldermen.

The respondent seems to place his chief reliance

upon the holding in *Shedlinsky* v. *Budweiser Brewing Co.,* 163 N. Y. 437, where it was decided that a lease of a saloon was not void for illegality — in that the premises were nearer to a grammar school than was allowable under the excise laws — for the reason that the lease was valid upon its face; the court holding that the presumption of legality that attaches to an agreement apparently valid must, before the instrument may be declared void, be overthrown by proof "that the lessor intended that the statute should be violated," and that no such proof was present. There the cause of the claimed invalidity was the distance to the school, which, of course, did not appear on the face of the lease. Here it was, either actually or by force of legal presumption, known to all the parties that the intended use was one that had, by competent authority, been made an illegal use. The court there also referred to the failure of the lessee, the party asserting illegality, to show " that no license ever could, possibly, be obtained by the lessee." There the license could have been obtained by procuring from the board of excise permission to transfer an existing license enjoyed by premises within the limits mentioned to other premises within those limits, but at a greater distance from the school. See the opinion of the Appellate Division, *Shedlinsky* v. *Budweiser Brewing Co.,* 17 App. Div. 470. The respondent here contends that as the zoning resolution contains a provision reserving to the board of estimate and apportionment the right to change and re-locate the several use districts, and to amend the restrictions therein, it was open to the defendant to endeavor to procure such an alteration or amendment as would legalize the use of the premises for garage purposes. But that provision added nothing to the resolution; the board of estimate and apportionment had that power from the statute, and such a

provision could accomplish no more than would a declaration in an act of the legislature which purported to confer on the succeeding legislature the right to amend the law then being passed. We see no analogy between this and the *Shedlinsky* case.

Judgment reversed, with costs, and complaint dismissed, with costs.

GUY and WEEKS, JJ., concur.

Judgment reversed, with costs.