LEO DITOMASSO, Individually, as a Stockholder, as a Director, as a Voting Trustee under Voting Trust Agreement Affecting the Stock of PARAMOUNT ICE CORPORATION, on Behalf of Himself and All Others Similarly Situated and on Behalf of PARAMOUNT ICE CORPORATION, Respondent, *v.* VITO LOVERRO, PAUL DEMARCO, DOMENICO GATTO, GIACOMO GIORDANO, CRESCENZIO TOTO, FRANCESCO ABBADESSA, VINCENZO D'INGEO, ANGELO FAZIO MICHELE DEFILIPPIS, PARAMOUNT ICE CORPORATION, SAMUEL RUBEL, RUBEL CORPORATION and TOM PAGANO, Appellants, Impleaded with CAMILLO D'AMARIO, Defendant.

Second Department, March 5, 1937.

*Frank W. Holmes,* for the appellants Paramount Ice Corporation and its defendant directors.

*Walter H. Pollak* [*Samuel J. Silverman* and *Leslie Handler* with him on the brief], for the appellants Rubel, Rubel Corporation and Pagano.

*Jacob Krisel* [*George Lessall* with him on the brief], for the respondent.

LAZANSKY, P. J. Representative action by a stockholder and director and voting trustee of Paramount Ice Corporation (called "Paramount") against all of its other directors, stockholders and voting trustees, except one, and against Samuel Rubel, Rubel Corporation and one Pagano (the last three being here called "Rubel"), for a judgment restraining defendants from making a certain contract between Paramount and the Rubel Corporation, and to account for all moneys and property and damages belonging to Paramount, and that the defendants pay such damages.

The contract was dated March 30, 1933. Before it was executed a motion was made for an injunction *pendente lite* restraining the execution of the contract. That motion was denied. On the trial it appeared that the contract had been executed and that the parties were proceeding thereunder up to and including the time of the trial.

The court awarded judgment as follows: (1) Canceling and annulling the contract and enjoining all of the defendants from acting or operating thereunder, or performing the terms thereof; (2) adjudging that the damages of Paramount resulting from the acts of defendants were in the sum of $150,722.65 as of December 31, 1935; (3) judgment in favor of plaintiff, individually, against all of the defendants in the sum of $18,252.51, with interest (that sum being plaintiff's damages as a stockholder, as he holds 12.11 per cent of the shares); (4) defendants to pay to Paramount $60,000, to be deposited under control of the court, and to be available for payment of fees of plaintiff's attorney, plaintiff's expenses of the litigation, and any taxes when same shall be determined; plaintiff is permitted to issue execution for said sum in the name of Paramount; (5) an assessment to be had of the damages suffered by Paramount subsequent to December 31, 1935, to the date when such damages shall be finally terminated, on the same basis that  the other damages were determined, and that plaintiff's proportionate share of said damages, based upon his stock holdings, shall be determined and payment directed to be made by defendants; all of which is to be inserted at the foot of the judgment; (6) an extra allowance of $2,000. (This is in excess of five per cent of plaintiff's recovery.)

It was charged by plaintiff, and the proof demonstrates, that the purpose of the contract was to restrain competition and to enable the Rubel Corporation to be a party to a monopoly of the manufacture and sale of ice in Brooklyn. The contract was, therefore, illegal and void under the General Business Law, section 340, subdivision 1. It was contrary to the public policy of the State.

The contract being illegal, the parties to it being *in pari delicto*, as was found, courts will aid none of them in its enforcement, while executory in whole or in part, nor when executed. (*Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558; *Leonard* v. *Poole*, 114 id. 371; *Pittsburg Carbon Co.* v. *McMillin*, 119 id. 46; *Adler* v. *Zimmerman*, 233 id. 431; *Tench* v. *Lawson*, 225 App. Div. 198; 1 Black on Rescission and Cancellation, § 313.)

The courts will not recognize contracts which rest upon an illegal consideration, and will not order restitution in so far as one has been performed, but may interfere and prevent the arrangement being further consummated in case of partial performance. (*Darling* v. *Darling*, 241 App. Div. 57, citing *Schley* v. *Andrews*, 225 N. Y. 110; *McDonald* v. *McDonald*, 228 App. Div. 341.) Especially when the public has an interest, as here, in the subject-matter of the contract, will equity afford relief to the extent of rescission, but not in damages. (1 Black on Rescission and Cancellation, § 313.)

For the reasons stated, and aside from the rule that rescission is inconsistent with damages (*Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.*, 230 N. Y. 316), Paramount, were it plaintiff, would not be entitled to any damages. Since the corporation could not recover damages, plaintiff, who represents it, may not. The representative's rights are limited by the rights of the corporation. A defense good against it is valid against him. (*Alexander* v. *Donohoe*, 143 N. Y. 203, 211.)

In the absence of a finding that any consideration passed from Rubel to defendant directors, there is no liability here such as was found in *Jacobellis* v. *Prudential Ice & Coal Corp.* (244 App. Div. 255; modfd., 269 N. Y. 632).

There is, therefore, no legal justification for charging Rubel in damages.

Not so, however, with the directors. It was found by the trial court that they knew, or should have known, the contract was unlawful, and that they entered into it for personal gain. Thus they have violated their trust duty. They must reimburse Paramount for any damage caused thereby.

To measure the damages in this case is not without difficulty. In 1932, the first whole year in which Paramount was in business, on a paid-in capital of $300,000 it made a profit of $81,156.52. On this basis of profit, it would be easy enough to calculate the profits from April 1, 1933, the date the contract went into effect, until December 31, 1935 (" the contract period " considered below), if all other items determinative of profit were the same during that

period as in 1932. However, the situation is not so simple. During the year 1932 there was present an element affecting profits which the trial court did not take into consideration in calculating profits for the " contract period," *i. e.*, the sharp price-cutting competition that existed in 1932, resulting in subnormal selling prices, due, it is charged, to Rubel's desire to acquire Paramount's plant.

The court calculated profits for the " contract period " on the basis of normal selling prices. On the proof presented here, this was error. An element to be considered was the possibility that, if the contract had not been made, the price war of 1932 would have continued during the " contract period." While this may be largely speculative, there may be facts upon which it may be determined. Some of them are: The influences at work which brought about price-cutting in 1932; anything indicating it would cease during the whole or any part of the " contract period;" concern or interest, if any, of Paramount in an endeavor to discontinue price-cutting, in view of the fact it made a profit of twenty-seven per cent in 1932; effect on Rubel of loss of substantial profits on willingness to continue price war; indications that a truce would have been declared in some legal way during " contract period;" experiences before the " contract period;" conditions generally during that period, and any new elements affecting the industry generally or the contract during the " contract period."

The burden is upon the plaintiff to prove the damages. The directors were the cause of this illegal engagement, but they should be held only for the damages actually suffered.

Of course, in measuring the profit that would have obtained for the " contract period," all other material known or likely items affecting that profit must be reckoned in determining the loss occasioned by the contract.

The terms " bridge prices " and " market prices " have not been used here, because the record creates an uncertainty as to their meaning.

After the loss that was suffered by Paramount has been reckoned, plaintiff is entitled to judgment against the directors in a sum equal to twelve and eleven one-hundredths per cent of that amount, that being his interest in the corporate stock. When that amount is ascertained, that is the amount of the recovery in the action. Upon that basis the court has no power to make any provision in addition thereto for the benefit of plaintiff's counsel, or for any taxes that may accrue against defendant corporation. In reality, plaintiff was the only one injured. The court having declared the contract null and void, Paramount could not continue to do

business thereunder after judgment, and, therefore, there could be no further damages by reason of the contract. However, if the directors and Rubel continued to operate under the same arrangement, then Paramount would have a remedy for contempt against its directors and Rubel, and also a new remedy for damages against the directors. The court was warranted in making an extra allowance of five per cent. The case was extraordinary and difficult. The allowance, however, should have been upon the basis of the actual amount of plaintiff's recovery.

As to the defendants referred to herein as " Rubel," the judgment should be modified on the law by striking out each part thereof except the provision canceling and annulling the contract and restraining action or operation thereunder, or performance of the terms thereof, and as so modified affirmed, without costs. As to the other appealing defendants the judgment should be reversed on the law and the facts and a new trial granted, with costs to such appellants to abide the event.

CARSWELL, DAVIS and TAYLOR, JJ., concur; JOHNSTON, J., not voting.

As to defendants Samuel Rubel, Rubel Corporation and Tom Pagano, judgment modified by striking out each part thereof except the provision canceling and annulling the contract and restraining action or operation thereunder, or performance of the terms thereof, and as so modified unanimously affirmed, without costs.

As to the other appealing defendants, judgment reversed on the law and the facts and a new trial granted, with costs to such appellants to abide the event. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made.

Settle order on notice.