OPINION OF THE COURT
Bertram R. Gelfand, J.
In this proceeding to receive the proceeds of a claim arising from decedent’s death, a lienor has moved to vacate a conditional settlement of its lien. Petitioner is opposed. The issue presented is whether a party should be relieved of its agreement because the enforcement of the consideration it receives under the settlement is barred by public policy.
When the matter was first presented, the court granted the application to modify the limited letters of administration to sanction the receipt of the proceeds of the recovery but declined to judicially embrace the exotic aspects of the agreement between petitioner and the lienor (see Matter of Sanchez, NYLJ, June 13, 1984, p 13, col 3).
Petitioner herein is decedent’s mother, and, by dint of the waiver executed by the putative father, is the sole party retaining a distributive interest in her estate. On April 11, 1984, *200 petitioner executed a stipulation agreement with the Commissioner of Social Services of the City of New York, in his capacity as assignee of petitioner’s interest in the within estate, which provided, inter alla, for the payment of the sum of $2,000 to petitioner outright and for the payment to her of the further sum of $12,400, upon the condition of her departing the United States for the Dominican Republic. In the event that petitioner thereafter failed to leave the United States, the balance remaining after the initial payment of $2,000 would be paid to the Department of Social Services. Moreover, the stipulation provided that, upon petitioner’s receipt of the aforesaid funds, she would neither contest the termination of her public assistance case nor reapply for public assistance benefits in this country for a period of two years from the date of such termination.
In the decision granting the application to remove the restrictions on the limited letters of administration in order to permit the receipt of the proceeds of the settlement, it was determined that, to the extent that the stipulation required petitioner to leave this country and remain in a foreign jurisdiction, the court would not reach the propriety of this course of action nor would it sanction the possible in futuro denial of public assistance set forth in the agreement. In light of the court’s explicit unwillingness to sanction the entire schematic plan set forth in the stipulation, the decision authorized the parties to make such application as they deemed appropriate prior to the settlement of the decree (Matter of Sanchez, supra).
The lienor Commissioner of Social Services has now moved to vacate the stipulation and to interpose a claim for the entire net proceeds of the recovery pursuant to the assignment in his favor executed by petitioner on December 1,1983. Neither the administratrix nor any person on her behalf appeared personally upon the return date of the motion but she has filed an affirmation in opposition thereto.
Petitioner herein is a citizen of the United States. In that capacity, she possesses a constitutional right to travel which is an integral part of the panoply of personal liberty of which a citizen cannot be deprived without due process of law (Zemel v Rusk, 381 US 1; Kent v Dulles, 357 US 116; Williams v Fears, 179 US 270; see, also, Edwards v California, 314 US 160). It has been held that freedom of travel inheres in the very concept of ordered liberty that has been established by the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States:
“Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel *201 abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values * * *
“Freedom to travel is, indeed, an important aspect of the citizen’s ‘liberty’.” (Kent v Dulles, supra, pp 126-127.)
Petitioner’s constitutional right to travel, both domestically and abroad, may not be curtailed by the State in the absence of criminal conviction and penal incarceration. To the same extent, then, that the State of New York cannot require petitioner to remain in the Dominican Republic, so, too, may the State not prevent her return to New York, even were such return to result in her readmission to the public assistance rolls (see Edwards v California, 314 US 160, supra). In Edwards v California (supra, p 173), the Supreme Court held that, with regard to the constitutional limitations upon the police power of the State to curtail and control the welfare burdens upon local municipalities, no restriction “is more certain than the prohibition against attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders”.
In Shapiro v Thompson (394 US 618), the Supreme Court again addressed directly the constitutionality of State policies designed to circumscribe immigration into a jurisdiction for the purpose of thereby obtaining public assistance. Adverting to principles enunciated as early as the Passenger Cases — Smith v Turner (7 How [48 US] 283), in 1849, the court upheld the right of a citizen to travel to, and to settle in, any of the States of the Union, without interruption or restriction, as flowing not only from the constitutional right of travel but also from the fundamental concept of a national union consisting of one people. Upon according to the above principles the deference which they clearly command, the court held that:
“[T]he purpose of inhibiting migration by needy persons into the State is constitutionally impermissible.
“This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement * * * [t]he purpose of deterring the in-migration of indigents cannot serve as justification [for the governmental action challenged therein] since that purpose is constitutionally impermissible” (Shapiro v Thompson, 394 US 618, 629-631, supra).
*202 Moreover, in Shapiro v Thompson (supra), the Supreme Court held that, in addition to impinging upon the constitutional right to travel, a State’s attempt to deny otherwise mandated public assistance benefits to any of its legal residents on the basis of their motivation in moving to the State would violate such persons’ right to the equal protection of the laws under the Fourteenth Amendment. Thus, it would appear that the stipulation at issue herein directly implicates several areas of serious constitutional concern. The clear impact of the court’s holding in Shapiro v Thompson (supra), would preclude the enforcement of any State policy which would deny public assistance to an individual, who, for whatever reason, resumed legal residence in New York in an otherwise eligible state of indigence.
It is accordingly concluded that the stipulation entered into between petitioner and the Department of Social Services is in clear derogation of petitioner’s constitutional rights to travel and to due process of law under the Fifth and Fourteenth Amendments to the Constitution. As noted above, to the extent that the agreement was in derogation of such constitutional rights, the court declined to sanction the stipulation (Matter of Sanchez, supra).
The above stipulation is, in effect, an agreement which cannot be performed without the violation of otherwise controlling law. It has long been settled law that a contract made in violation of either a constitution or statute is an unlawful undertaking and, as such, is void and unenforceable (see Robitzek v Reliance Intercontinental Corp., 7 AD2d 407, affd 7 NY2d 1041; see, also, United States v Mississippi Val. Co., 364 US 520; Kaiser-Frazer Corp. v Otis & Co., 195 F2d 838, cert den 344 US 856; Peabody, Jr. & Co. v Travelers Ins. Co., 240 NY 511). The court is sensitive to the fact that the stipulation was the product of an agreement between otherwise competent adults. Nevertheless, it was an agreement entered into in the explicit good-faith expectation that it would be incorporated into an enforceable judicial decree. This unfounded hope cannot be realized because the terms of the stipulation trespass on serious constitutional rights. Where the parties were in good faith at all times, the court cannot require adherence to the terms of a stipulation on the part of one party when it could not constitutionally require adherence to its terms on the part of the other party. It has been held that nonenforceability of a contract made in violation of a statute results, even though only one party’s action would be in violation of the statute (see Parsky Funeral Home v Shapiro, 83 Misc 2d 566).
*203 Accordingly, for all of the above reasons, the motion to vacate the stipulation and to permit the interposition of movant’s claim against the estate is hereby granted.
The within disposition is without prejudice to the submission by any party of a proposal which would encompass the holding in escrow of the major portion of the funds for the benefit of petitioner to be disbursed to her in periodic payment in lieu of public assistance. Such a plan would insure petitioner’s well-being and could be drafted so as not to entail any possible unconstitutional or otherwise illicit denial of public assistance to an otherwise eligible indigent resident or any unconstitutional infringement on the right of a United States citizen to travel to any part of her own country.