In the Matter of HUDSON HOLDING ASSOCIATES, Debtor.

Michael CARR and Celine Carr, Plaintiffs,

v.

HUDSON HOLDING ASSOCIATES, Defendants.

Bankruptcy No. 86 B 20402(HS). 89 Adv. 6060.

United States Bankruptcy Court, S.D. New York.

Dec. 6, 1989.

Donna R. Cohen, Office of Donald Tirschwell, New City, N.Y., for plaintiffs.

Jeffrey L. Sapir, Hartsdale, N.Y., for defendants.

## DECISION IN ACTION TO RESCIND AUCTION PURCHASE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Plaintiffs in this adversary proceeding seek to recover from the Debtor in possession, Hudson Holding Associates ("the Debtor"), a down payment of $40,-500.00 and $225.00 for a title search which the Plaintiffs paid towards the purchase of certain unimproved real estate which the Debtor offered for sale to the highest bidder at a special meeting of creditors pursuant to 11 U.S.C. § 363.

The Plaintiffs contend that the Debtor's ability to convey marketable title is immaterial because the title report revealed the existence of a covenant and restriction which prohibits the use of the property for residential purposes.

The Debtor denies the Plaintiffs' authority to cancel the purchase agreement and asserts as affirmative defenses; (1) that

the Plaintiffs' outbid two other bidders of the sale and purchased the property "AS IS"; (2) and that the covenant or restriction does not affect the entire parcel, but does restrict a part of its use.

## FINDINGS OF FACTS

1. On August 29, 1986, an involuntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code was filed against the Debtor. On September 30, 1986, this court entered an order for relief in the involuntary case. The Debtor continued in possession to operate its business as a real estate developer in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Included among the real estate properties owned by the Debtor were two parcels of undeveloped land in Warwick, New York. On or about April 26, 1988, the Debtor conducted a public sale of the Warwick property at a special meeting of creditors pursuant to court authorization in accordance with 11 U.S.C. § 363(c)(1). As noticed by the Debtor, the sale was conducted in accordance with printed Terms and Conditions of Sale which called for a deposit of ten percent of the purchase price.

3. Included in the written Terms and Conditions of Sale was the following provision:

(6) A sale, assignment or other disposition shall be without representations, or warranties of any kind by the Debtor, their agent or their estates. All Property shall be transferred "AS IS" and "WHERE IS".

4. The Plaintiff, Michael Carr, appeared at the special meeting of creditors and outbid two other potential purchasers, offering $405,000.00 for the property. The Debtor accepted the Plaintiffs' bid and requested a certified check for $40,500.00. The Plaintiff, Michael Carr, then applied to this court for an extension of time until the end of the day in order to produce a certified check for the required deposit. Notwithstanding that the next highest bidder objected to the additional time and claimed that the second highest bid should be accepted by the debtor, the court, none-

theless, granted the plaintiffs' request and allowed the plaintiffs additional time to return with a certified check for the deposit.

5. The plaintiff, Michael Carr, timely deposited with the debtor a certified check for $40,500.00.

6. Thereafter, a written contract of sale was executed between the debtor and the plaintiffs in April of 1988 which stated that the property in question was sold "AS IS", with a closing to take place on or before July 11, 1988.

7. After the contract of sale was executed, but prior to closing, the plaintiff incurred an expense of $225.00 to obtain a title report with respect to the subject property.

8. Rider Number 10 incorporated in the contract of sale provides as follows:

Whatever else is said in this contract, if any defect or objection to title shall arise which said defect objection the Purchaser is unwilling to waive, or if for any reason (other than a default by the Purchaser or Seller) title shall not close as provided in this contract, the liability of the Seller, if any, shall be to return the down payment, together with the net cost of examining title, if any, which said cost shall not exceed the charge fixed by the New York State Board of Title Underwriters. The Purchaser agrees to accept such sum or sums as liquidated damages. Upon replacement by the Seller of such sum or sums, this contract shall become null and void and neither the Seller nor the Purchaser shall thereafter have any further rights against each other.

9. Rider Number 11 incorporated in the contract of sale provides as follows:

Whatever else is said in Article 4 of the printed form, title to the premises shall be delivered subject to covenants, easements, restrictions and reservations of record which DO NOT:

(a) contain any outstanding options or rights of repurchase;

(b) require any affirmative acts or monetary payments;

(c) *interfere unreasonably with the use of the premises for residential purposes;* or (emphasis added)

(d) have not expired or become ineffective as a result of their own terms or by operation of law."

10. The title report which the Plaintiffs ordered, dated May 31, 1988, certified that a good and marketable title to the premises in question could be conveyed to the Plaintiffs by the Debtors subject to certain liens, encumbrances specified in the report, including covenants and restrictions with the Village of Warwick in Liber 581, cp 506.

11. The covenants and restrictions with the Village of Warwick related to a deed dated July 10, 1918 which provided that a strip of land in the width of 300 feet on each side of a brook which flowed through the property, known as the Mistucky Brook, "should be kept free from buildings and contamination". This restrictive covenant is stated in the title report as follows:

All of the provisions of a certain agreement between said Fanny R.M. Hitchcock and the said The Village of Warwick dated July 10, 1918 and recorded in Orange County Clerk's Office on July 16, 1918 in Liber 581 of Deeds, Page 506, under which agreement the said Fanny R.M. Hitchcock agreed with the said The Village of Warwick that a strip of land six hundred (600) feet in width being three hundred (300) feet upon each side of the Mistucky Brook feeding the reservoirs of The Village of Warwick should be kept free from buildings and contamination *if* said Mistucky Brook runs through part of the land herein conveyed and also subject to any other covenants and restrictions of record.

12. Upon receipt of the title report, the Plaintiff, Michael Carr, inspected the property he agreed to purchase and noticed that the Mistucky Brook wound its way through the entire property in question, with the result that the Plaintiffs could not build any residential property on the premises in question because the restriction applicable to a width of 300 feet on either side of the brook barred the Plaintiffs from residential development as planned.

13. The Plaintiffs maintain that they agreed to purchase the property in question because they proposed to construct residential homes on the land, whereas, the restrictive covenants affecting the 300 feet of width on either side of the Mistucky Brook meant that the Plaintiffs could not plan for any other use for the property in question other than as a bird sanctuary.

14. Having been frustrated in their purpose for purchasing the property from the Debtor, the Plaintiffs seek to rescind their agreement and recover their deposit together with the cost of the title report, because they regard the property as useless to them, even though the Debtor can convey marketable title to them pursuant to the "AS IS" sale.

15. The Plaintiffs assert that a defect or an objection to title has arisen in accordance with Rider Number 10 of the Rider attached to the contract of sale because the restrictive covenant with respect to the land adjacent to the Mistucky Brook will "interfere unreasonably with the use of the premises for residential purposes" within the meaning of the covenants and restrictions language contained in Rider Number 11 attached to the contract.

## DISCUSSION

■ A written contract merges all prior and contemporaneous negotiations regarding the same subject, especially where the written contract clearly states that all agreements between the parties are merged and incorporated. *Hart v. East Plaza, Inc.*, 403 N.Y.S.2d 928, 930, 62 A.D.2d 113, 115 (4th Dept.1978).

The Debtor alleged at the hearing held on October 30, 1989, that a document entitled the Terms and Conditions of Sale was made available to the Plaintiff prior to the sale of the Warwick property and that the terms contained therein are binding upon the parties. Paragraph (6) of this document provides that "[a] sale, assignment or other disposition shall be without representations, or warranties of any kind by the Debtor, their agent or their estates. All property shall be transferred "AS IS"

and "WHERE IS". However, paragraph 22 of the contract of sale dated April, 1988 provides that "[a]ll prior understandings and agreements between SELLER and PURCHASER are merged in this contract and completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract."

Applying not only the merger doctrine, but the language of the contract of sale, it is clear that the terms contained within the Terms and Conditions of Sale merged into the contract of sale. Therefore, the provisions set forth in the contract of sale are controlling and the only document which will be considered in determining the relative rights of the parties to this action is the contract of sale.

█ It is fundamental New York contract law that where a written contract contains an ambiguity or contradiction or apparently inconsistent provisions, the "contra proferentem" principle requires that the contract be construed against the drafter. *Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2nd Cir.1987); See also *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); *In re Fidelity Mortg. Investors*, 12 B.R. 641 (Bankr.S.D. N.Y.1981); *Wallace v. Brown*, 485 F.Supp. 77 (S.D.N.Y.1979). However, the doctrine of "contra proferentem" should be applied only after all aids to construction have been employed, but have failed to resolve ambiguities in a written instrument. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2nd Cir.1983).

The contract of sale between the Plaintiffs and the Debtor appears to contain contradictory provisions. Paragraph 7 entitled "Working Order" of the Rider to the contract of sale provides that "the property is being offered in an "AS IS" condition and the "Personal Property" section of the contract of sale provides that "THE SAID PREMISES IS BEING SOLD IN AN 'AS IS' CONDITION." However, paragraph 11(c) to the Rider provides that " ... the premises shall be delivered subject to covenants, easements, restrictions and reservations of record which DO NOT interfere unreasonably with the use of the premises for residential purposes."

█ The contract is a standardized contract prepared by the Seller/Debtor and the "as is" language in the "Personal Property" and "Working Order" sections appear to refer only to personal property or buildings which might have been included in the sale. If the contract is interpreted in this way, then the contract provisions could be read consistently, with the "as is" portions controlling as to personal property and paragraph 11 as to real property. Further, since there was no personal property involved in the sale, the seller would simply be bound to deliver the real property without covenants which would interfere unreasonably with the use of the premises for residential purposes.

However, assuming *arguendo* that either of the "as is" paragraphs refer to real property then such paragraphs cannot be read consistently with paragraph 11(c) of the Rider. Construing these inconsistencies against the drafter, the Debtor in this case, paragraph 11(c) binds the Debtor to deliver the premises to the Plaintiff without covenants which would interfere unreasonably with the use of the premises for residential purposes irrespective of the language contained in the "AS IS" paragraphs.

It is undisputed that the Warwick property contains a negative covenant which prevents the erection of any structures within 300 feet on either side of the Mistucky Brook which runs through the property. Moreover, it is undisputed that the stream runs the length of the property.[1] As a result of the extent to which the stream meanders through the property and the

---

1. The debtor neither admitted nor denied paragraph 12 of the complaint which alleged that "[t]he covenant and restriction ... reveals that there is a 600 foot wide easement running through what appears to be the length of the property in question." Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

negative covenant prohibiting building on either side, this court finds that the covenant interferes unreasonably with the use by the Plaintiff of the property for residential purposes.

As demonstrated by the title report, the existence of the negative covenant would not prevent the Debtor from delivering good and marketable title. However, paragraph 10 of the rider provides that "... if for any reason (other than a default by the Purchaser or Seller) title shall not close as provided in the contract, the liability of the Seller, if any, shall be to return the down payment, together with the net cost of examining title, if any, which said cost shall not exceed the charge fixed by the New York State Board of Title Underwriters. The Purchaser agrees to accept such sum or sums as liquidated damages." In accordance with this provision, the Plaintiffs are entitled to recover their down payment of $40,500.00 together with the $225.00 cost of the title examination.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The inconsistencies contained within the contract of sale between the Plaintiff and Debtor are construed against the Debtor/Drafter.

3. The negative covenant which prohibits building within 300 feet of either side of a stream which meanders through the length of the subject matter property interferes unreasonably with the use of the property for residential purposes. As a result, the Plaintiffs are entitled to rescind the contract of sale.

4. The Plaintiffs are entitled to the recovery of $40,500.00 representing their down payment, as well as the sum of $225.00, expended for a title search.

SO ORDERED.