In re Jesse CROMER, Debtor.

Paul KROHN, as Trustee in Bankruptcy for the Estate of Jesse Cromer, Plaintiff,

v.

Gervasio ORTA a/k/a John Orta, Defendant.

Bankruptcy No. 189–93264–260.
Adv. No. 191–1517.

United States Bankruptcy Court, E.D. New York.

April 20, 1993.

Joel B. Mayer, New York City, for defendant.

Paul I. Krohn, Brooklyn, Trustee in Bankruptcy.

Finkel Goldstein Berzow & Rosenbloom by Kevin J. Nash, New York City, for trustee.

## DECISION ON MOTION OF THE DEFENDANT FOR SUMMARY JUDGMENT SEEKING TO DISMISS THE TRUSTEE'S COMPLAINT

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which the Plaintiff, Paul Krohn, Esq., as the Chapter 7 trustee (the "Trustee") for the estate of Jesse Cromer, the debtor ("Cromer" or the "Debtor"), seeks to have the defendant, Gervasio Orta (the "Defendant" or "Orta"), turnover certain funds in his possession pursuant to 11 U.S.C. § 542.[1]

This matter came before the Court on the Defendant's motion for summary judgment seeking to dismiss the Trustee's complaint pursuant to Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bank.P. 7056. After reviewing the documents on file in this Court and for the reasons hereinafter set forth, the Defendant's motion for summary judgment is granted.

### FACTS

The Debtor is an officer, director and the sole shareholder of Cromco Corp. ("Cromco"), which owned real property located at 15–32 127th Street, College Point, New York.

On May 5, 1988, Cromco entered into a contract (the "Contract") to sell the aforementioned property to J.O. Holding Corp. ("J.O. Corp.") for $970,000 allocated as fol-

---

**1.** Section 542 provides for the turnover of property of the estate to the trustee as distinguished from § 543 which requires custodians to turnover property of the estate to the trustee. In this proceeding, there has been no suggestion that Orta is a custodian within the meaning of § 101(11).

lows: a $30,000 downpayment with the balance of $940,000 subject to public financing. Orta and the Debtor each signed the Contract as "President" of their respective companies.

The Contract contains express disclaimer and merger provisions which state in relevant part:

> 25. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this contract, made by the other.

Def.'s Mot. for Summ. J., Ex. B at 3.

The Contract also stated that "[t]his agreement may not be changed or terminated orally." *Id.*

These clauses were reiterated in an attached rider (the "Rider") to the Contract which was also signed by both the Debtor and Orta on behalf of their respective companies. The Rider states in relevant part:

> 49. ENTIRE AGREEMENT: All prior understandings and agreements between "Seller" [the Debtor] and "Purchaser" [Orta] are merged in this contract, and it completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that is not set forth in this contract.
>
> 50. CHANGES: This contract may not be changed or cancelled except in writing.

*Id.* at 9.

Also attached to the Contract was an additional typed rider (the "Improvement Rider") dated May 5, 1988, which contains the signatures of both the Debtor and Orta on behalf of their respective companies. The Improvement Rider required Cromco to make certain improvements to the property in exchange for $20,000 to be paid by Classic Label.[2] However, J.O. Holding was

inserted in place of "Classic Label" by drawing a line through "Classic Label" and writing in "J.O. Holding."

On October 11, 1989, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, Paul Krohn, Esq., was appointed as trustee and on October 7, 1991, he commenced this adversary proceeding.

The Trustee alleges that contemporaneously with the Contract, the Debtor and Orta entered into a side agreement in which Orta agreed to pay an additional $200,000 for the property to the Debtor. As proof of the side agreement, the Trustee submits an unsigned written memorandum titled "Purchase Agreement" ("Purchase Agreement") which states in relevant part:

> This agreement is made this 9th day of May, 1988 in order to facilitate the sale of ... 15–37 127 St. College Point owned by Cromco Corp. Jesse Cromer sole shareholder.
>
> John Orta agree to pay Jesse Cromer $200,000 over the agreed upon purchase price of $970,000, as follows $50,000 upon signing of contract of sale. $50,000 upon closing of sale. $100,000 to be paid starting one year after date of closing; till entire amount plus ten percent interest is paid in full. Monthly installments are to be no less then $5,000 increments.

Trustee's Resp. in Opp'n to Mot. for Summ. J., Ex. B, annexed as Ex. 1.

Although there are two areas for witnesses to sign and date the Purchase Agreement, no such signatures appear on the document. *Id.*

The Purchase Agreement also contains notations showing that the Debtor received payments of $39,500 on July 12, 1988, and $59,000 on September 27, 1988. *Id.* According to the Trustee, these alleged payments came from Orta. However, the Trustee admits that the Debtor is unable to account for these payments. Moreover, Orta, by affidavit, has denied ever making such payments.

---

**2.** Classic Label is another company controlled by Orta.

To further support the existence of the side agreement, the Trustee notes the following: (1) during § 341 meetings, the Debtor gave sworn testimony as to the existence of the side agreement[3] and (2) the Debtor listed in his bankruptcy schedule B–2,[4] a $125,000 liquidated debt owed to the Debtor by John Orta "pursuant to written contract regarding sale by Cromco Corp. to Orta of premises 15–22 127th St., College Point, NY, April 17, 1989." Trustee's Resp. in Opp'n to Mot. for Summ.J., Ex. A.

The Trustee also submits a copy of a check dated April 27, 1989, issued by Classic Labels[5] to Tags Construction, which the Trustee asserts is one of the Debtor's companies, in the amount of $15,000. Although this check was subject to a stop payment order, the Trustee claims that the check was given to the Debtor in furtherance of the side agreement.

According to the Trustee, Orta disputes this account and instead claims that the check represented a failed attempt at bribery. Apparently, the Debtor refused to attend the closing or to execute necessary closing papers unless he received some extra compensation. The Trustee states that Orta told him that he capitulated to the bribe demand and wrote the April 27, 1989, check to Tags Construction. The check was made payable ten (10) days after the date of the actual closing. The Trustee further asserts that Orta explained that following the closing which had been adjourned from time to time since the Contract was entered into, he cancelled payment on the check.

In opposition, the Defendant, by sworn affidavit, denied that any side agreement ever existed between the parties.[6] He also stated that he did not prepare, consent to, or agree with, any of the terms contained in the Purchase Agreement.

In the affidavit, Orta acknowledged issuing the $15,000 check; however, he offered a different explanation than either proffered by the Trustee. According to Orta, the check related to the Improvement Rider and was issued in reliance upon representations by the Debtor that the improvements would commence following the closing. Orta stated that since the improvements did not immediately begin, he then cancelled the check.

On October 7, 1991, the Trustee commenced this adversary proceeding seeking to enforce the alleged side agreement. The Trustee bases his ability to do so on the fact that (1) a valid side agreement exists between the Debtor and Orta and (2) the side agreement is in the nature of a fraudulent conveyance and is therefore recoverable under §§ 544(a) and 548 of the Bankruptcy Code since the Trustee is seeking to recover the full value of a property right which was transferred for less than fair market value.[7]

On April 14, 1992, the Defendant filed the instant motion for summary judgment asking this Court to dismiss the Trustee's complaint as no side agreement exists between the parties. Even if the side agreement existed, Orta argues that summary judgment is still proper inasmuch as the agreement would be unenforceable as it is an illegal contract lacking consideration on the part of the Debtor. Additionally, enforcing the side agreement would violate the merger and disclaimer clauses contained in the Contract as well as the parol evidence rule and the statute of frauds.

---

3. Pursuant to § 341, the United States trustee must convene and preside over a meeting of the debtor's creditors. Such meeting shall include the examination of the debtor under oath. Fed. R.Bankr.P. 2003(b).

4. Schedule B–2 lists the personal property of the Debtor.

5. At the time of the sale, the Trustee alleges that J.O. Corp. was doing business as Classic Labels.

6. As previously mentioned, Orta also denied making any payments in furtherance of the side agreement.

7. Since the side agreement was for $200,000, the Trustee contends that the property was therefore undervalued for approximately the same amount. However, the Trustee's avoiding powers under § 548 are limited to transactions or obligations made or incurred by the debtor. In this case, the conveyance was made by Cromco which is not a debtor before this Court.

## DISCUSSION

### A. Standards for Summary Judgment

A party is entitled to summary judgment if it can demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Viacom Int'l, Inc. v. Icahn,* 946 F.2d 998, 1000 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992); *Aldrich v. Randolph Cent. School Dist.,* 963 F.2d 520, 523 (2d Cir.1992). The record must be viewed in the light most favorable to the non-moving party, with all ambiguities and inferences resolved in favor of the party against whom summary judgment is sought. *See Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572 (2d Cir.1991); *Viacom Int'l, Inc. v. Icahn,* 946 F.2d at 1000. However, the non-movant may not merely rest on the allegations in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *Gnazzo v. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992).

In accord with this standard, summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Mazurkiewicz v. New York City Transit Auth.,* 810 F.Supp. 563 (S.D.N.Y.1993). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v.*

*Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

Since this is a motion for summary judgment, the Court will resolve all ambiguities and inferences in favor of the party against whom summary judgment is sought, i.e. the Trustee. Having reviewed the documents in this matter, the Court concludes that the Trustee has successfully raised a genuine issue as to whether the side agreement exists. However, the Court believes that this showing alone is insufficient to defeat the within motion for summary judgment. Rather, the Trustee must also establish a genuine issue as to the enforceability of the side agreement.

### B. Existence of a Valid Contract

Orta has argued that the side agreement can not be enforced in light of the merger clause contained in the Contract and Rider, the parol evidence rule and the statute of frauds. Conversely, the Trustee claims that fraud nullifies these defenses.

#### 1. The Merger Clause

■ According to the Complaint filed by the Trustee, the purported side agreement was entered into "contemporaneously with the contract sale...." Trustee's Compl. at 3. In such circumstances, the law is well-settled that a written contract merges all prior and contemporaneous negotiations on the same subject, especially where, as here, the contract plainly states that all agreements are merged and incorporated. *In re Hudson Holding Assoc's.,* 108 B.R. 32 (Bankr.S.D.N.Y.1989); *College Aux. Servs. v. Slater Corp.,* 90 A.D.2d 893, 456 N.Y.S.2d 512 (N.Y.App.Div.1982); *Hart v. East Plaza, Inc.,* 62 A.D.2d 113, 403 N.Y.S.2d 928 (N.Y.App.Div.1978).

#### 2. Parol Evidence Rule

■ Both the Contract and Rider contain language requiring any modifications to be in written form.[8] Where, as here, an agreement is reduced to a writing, the parol evidence rule bars evidence of any prior

---

**8.** Paragraph twenty-six of the Contract states that "[t]his agreement may not be changed or terminated orally...." Def.'s Mot. for Summ.J., Ex. B at 3. Paragraph fifty of the Rider states: "CHANGES: This contract may not be changed or cancelled except in writing." *Id.* at 9.

or contemporaneous oral agreement where such agreement is offered to vary or add to the terms of the writing. N.Y.Gen.Oblig. Law § 15–301 (McKinney 1989);[9] *Sharma v. Chemical Bank,* 723 F.Supp. 200 (S.D.N.Y.1989), *aff'd sub nom. Sharma v. Skaarup Ship Mgmt. Corp.,* 916 F.2d 820 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991); *Fogelson v. Rackfay Const. Co., Inc.,* 300 N.Y. 334, 90 N.E.2d 881 (1950); *Counties of Warren and Washington v. Boychuck,* 109 A.D.2d 1024, 487 N.Y.S.2d 139 (N.Y.App.Div.), *appeal denied,* 65 N.Y.2d 603, 492 N.Y.S.2d 1025, 482 N.E.2d 567 (1985); *Katz v. Am. Technical Indus.,* 96 A.D.2d 932, 466 N.Y.S.2d 378 (N.Y.App. Div.1983); *Klein v. Jamor Purveyors, Inc.,* 108 A.D.2d 344, 489 N.Y.S.2d 556 (N.Y.App.Div.1985). To do otherwise and allow parol evidence to vary a written document containing a merger clause would leave few written instruments safe or secure. *Fogelson,* 300 N.Y. at 340, 90 N.E.2d at 884.

### 3. Statute of Frauds

New York's statute of frauds is contained in § 5–701(a) of the N.Y.Gen.Oblig. Law which states as follows:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement, promise or undertaking:
>
> 10. Is a contract to pay compensation ... in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein....

N.Y.Gen.Oblig. Law § 5–701 (McKinney 1989). *See Enfeld v. Hemmerdinger Estate Corp.,* 34 A.D.2d 980, 312 N.Y.S.2d 735 (N.Y.App.Div.1970), *aff'd,* 28 N.Y.2d 606, 268 N.E.2d 649, 319 N.Y.S.2d 854 (1971) (no recovery in absence of written agreement to pay plaintiff for services rendered in negotiating purchase of real property).

To satisfy the statute of frauds, there must be a writing which contains substantially the whole agreement and all its material terms. *Kobre v. Instrument Sys.,* 54 A.D.2d 625, 387 N.Y.S.2d 617 (N.Y.App.Div.1976), *affd,* 43 N.Y.2d 862, 374 N.E.2d 131, 403 N.Y.S.2d 220 (1978) (quoting *Mentz v. Newitter,* 122 N.Y. 491, 497, 25 N.E. 1044, 1046 (1890)). However, the writing need not be in one document; it may be pieced from several writings connected either expressly or by internal evidence of the subject matter and occasion. *Klein,* 108 A.D.2d 344, 489 N.Y.S.2d at 559.

The documents relied on by the Trustee are insufficient to satisfy the statute's requirements as they fail to set forth the essential terms of the oral agreement alleged by the Trustee. Not only is the memorandum not signed by Orta (the party being charged) but it also does not recite any consideration being given by either party. *See Klein,* 108 A.D.2d 344, 489 N.Y.S.2d 556 (unsigned typewritten memorandum which omitted material terms along with insurance applications did not meet the statute of frauds); *Kobre,* 54 A.D.2d at 626, 387 N.Y.S.2d at 619 (where the note or memorandum evidences a contract different from that which the parties entered into, it fails to satisfy the statute of frauds). In such circumstances, summary judgment is "appropriate and frequently the only meaningful remedy" when the claimed oral contract falls within the statute of frauds and no corroboration exists equivalent to that furnished by a writing. Practice Commentaries to N.Y.Gen. Oblig.L. § 5–701 at 284 (McKinney 1989). Were it otherwise, a contracting party would be exposed to the risk of being held to a nonexistent bargain on the basis of self-interested and unreliable oral testimony. *Id.*

---

9. Section 15–301 of the N.Y.Gen.Oblig.Law states as follows:

 1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent. N.Y.Gen.Oblig.Law § 15–301 (McKinney 1989).

### 4. Fraud

Despite the foregoing, the Trustee correctly argues that fraud is an exception to Orta's defenses based on the Contract's merger clause, *Lawlor v. Engley,* 166 A.D.2d 799, 563 N.Y.S.2d 160 (N.Y.App. Div.1990); *Caramonte v. Barton,* 114 A.D.2d 680, 494 N.Y.S.2d 498 (N.Y.App. Div.1985); *O'Keeffe v. Hicks,* 74 A.D.2d 919, 426 N.Y.S.2d 315 (N.Y.App.Div.1980), the parol evidence rule, *Id.* and the statute of frauds. *Lawlor,* 166 A.D.2d 799, 563 N.Y.S.2d 160; *Caramonte,* 114 A.D.2d 680, 494 N.Y.S.2d 498. Furthermore, the Trustee claims that the allegations of fraud create a material factual issue which thereby necessitates that this Court deny Orta's motion for summary judgment. However, as will be seen, whether the Trustee has successfully raised a material factual issue concerning the existence of the side agreement is not alone dispositive of the within motion for summary judgment.

### C. Illegality

By diverting funds away from Cromco for his own personal benefit, Orta claims that the Debtor has breached his duty of loyalty to Cromco and appears guilty of criminal conduct.[10] Therefore, Orta maintains that the contract is illegal and unenforceable.

In general, parties may incorporate into their agreements any provisions which are not illegal or violative of public policy. 21 N.Y.Jur.2d Contracts § 137. However, their agreement must not violate any federal or state constitution or laws, any city or town ordinances, or any rule of common law. *Id.; Estate of Sanchez,* 126 Misc.2d 199, 481 N.Y.S.2d 601 (N.Y.Sur.Ct. 1984). It has long been the law in New York that:

Any act, promise or agreement designed or intended to accomplish the furtherance or effectuation of an unlawful purpose is unlawful and every such promise or agreement is void and unenforceable.

21 N.Y.Jur.2d Contracts § 138; *Dodge v. Richmond,* 10 A.D.2d 4, 196 N.Y.S.2d 477,

(N.Y.App.Div.), *aff'd,* 8 N.Y.2d 829, 168 N.E.2d 531, 203 N.Y.S.2d 90 (1960); *Upper Nyack v. Missionary Alliance,* 143 Misc.2d 414, 540 N.Y.S.2d 125 (N.Y.Sup.Ct.1988), *aff'd,* 155 A.D.2d 530, 547 N.Y.S.2d 388 (N.Y.App.Div.1989); *Markowitz v. Arrow Const. Co.,* 102 Misc. 532, 169 N.Y.S. 159 (N.Y.Sup.1918).

The consideration underlying a contract can constitute the illegality. 21 N.Y.Jur.2d Contracts § 138.; *Di Tomasso v. Loverro,* 250 A.D. 206, 293 N.Y.S. 912 (N.Y.App.Div.), *aff'd,* 276 N.Y. 551, 12 N.E.2d 570 (1937); *Upper Nyack,* 143 Misc.2d 414, 540 N.Y.S.2d 125. Illegal consideration consists of any act or forbearance or promise of the same, which is contrary to law or public policy. 21 N.Y.Jur.2d Contracts § 139; *Upper Nyack,* 143 Misc.2d 414, 540 N.Y.S.2d 125. It follows that any agreement to do or commit an illegal act is illegal and Courts will not hesitate to deem it such. 21 N.Y.Jur.2d Contracts § 139; *Di Tomasso,* 250 A.D. 206, 293 N.Y.S. 912; *Darling v. Darling,* 241 A.D. 57, 270 N.Y.S. 557 (N.Y.App.Div.), *aff'd,* 265 N.Y. 650, 193 N.E. 428 (1934).

### 1. Consideration

Orta alleges that no consideration exists for the purported side agreement on behalf of the Debtor and asserts, without contradiction by the Trustee, that the Debtor had no personal interest in the property nor was a party to the Contract. Moreover, the written memorandum furnished by the Trustee to support the side agreement is conspicuous in that it does not recite any consideration given by the Debtor.

In attempting to demonstrate that good consideration was given, the Trustee states "[t]o the extent that a side agreement existed between the [D]ebtor and Orta, this obviously diminished the true value of the property and must be viewed as potentially disguised consideration." Trustee's Resp. in Opp'n to Mot. for Summ.J. at 6. The Trustee argues that this disguised consideration passes through to the shareholders

---

**10.** Orta suggests that the Debtor may have accepted bribes as well as committed tax evasion by failing to report the amount of the side agreement to the tax authorities.

of Cromco, i.e. the Debtor, and derivatively to the Trustee who assumes control of the stock under § 541 of the Bankruptcy Code.

 It is a basic tenet of contract law that a party to an illegal contract may not ask a court of law to help him achieve his illegal object. 21 N.Y.Jur.2d Contracts § 142. *See Stone v. Freeman*, 298 N.Y. 268, 82 N.E.2d 571 (1948) (agreement in which agent would spend funds to bribe purchasing agent was illegal and principal could not recover the balance of funds which agent diverted to his own interests); *Harris v. Economic Opportunity Comm'n*, 171 A.D.2d 223, 575 N.Y.S.2d 672 (1991) (court refused to allow holder of winning raffle ticket to receive prize as lottery violated state law); *Chassman v. People Resources*, 151 Misc.2d 525, 573 N.Y.S.2d 589 (N.Y.Civ.Ct.1991) (dating service's contract violated N.Y. law, thus contract was void and unenforceable and summary judgment was appropriate for consumer); *Parsky Funeral Home v. Shapiro*, 83 Misc.2d 566, 372 N.Y.S.2d 288, (N.Y.City Ct. of Roch.1975) (noncompliance with statute requiring funeral homes to furnish various written statements at the time funeral arrangements are made rendered agreement illegal and thus, funeral home could not recover for services rendered even on a quantum meruit basis). Moreover, a person cannot plead or prove in any court a case in which he or she must show an illegal purpose as the basis for the claim. *Nat. Petrochemical Co. v. M/T Stolt Sheaf*, 722 F.Supp. 54 (S.D.N.Y.1989); *Anabas Export Ltd. v. Alper Indus. Inc.*, 603 F.Supp. 1275 (S.D.N.Y.1985); *Stone*, 298 N.Y. at 271, 82 N.E.2d at 572; *Big Top Stores, Inc. v. Ardsley Toy Shoppe, Ltd.*, 64 Misc.2d 894, 315 N.Y.S.2d 897 (N.Y.Sup. Ct.1970). "No court should be required to serve as ... referee between thieves." *Stone*, 298 N.Y. 268, 82 N.E.2d 571. *See also* 21 N.Y.Jur.2d Contracts § 142 (courts will close their doors to plaintiff who seeks to enforce an illegal bargain).

 To use an old cliche, the Trustee has hoisted himself on his own petard. By alleging that the contract is fraudulent, he negates Orta's defenses based on the merger clause, the parol evidence rule and the statute of frauds. However, he can not then ask this Court to enforce the fraudulent agreement. To do so would force this Court to serve as a referee and arbitrate a contract based upon illegal consideration. Such a result is intolerable. *See Di Tomasso*, 250 A.D. 206, 293 N.Y.S. at 916 (courts will not recognize contracts which rest upon illegal consideration); *Darling*, 241 A.D. 57, 270 N.Y.S. 557 (same); *Cochran v. Dellfava*, 136 Misc.2d 38, 517 N.Y.S.2d 854 (N.Y. City Ct.1987) (court will not extend its aid by refereeing between thieves). *See also Nat. Petrochemical*, 722 F.Supp. at 55 (public policy forbids courts from aiding parties in enforcing illegal contracts). Just as courts should not be timid in voiding agreements which injure the public good or contravene an established interest of society, *Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70 (2d Cir.1982), neither should Courts shrink from refusing to enforce illegal contracts especially where enforcement would benefit the perpetrator of the unlawful deed. *See* 21 N.Y.Jur.2d Contracts § 176; *McConnelly v. Com. Pictures Corp.*, 7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960); *Braunstein v. Jason Tarantella, Inc.* 87 A.D.2d 203, 450 N.Y.S.2d 862 (N.Y.App.Div.1982); *Cochran*, 136 Misc.2d 38, 517 N.Y.S.2d 854. Based on the Trustee's pleadings and the documents before this Court, it is clear that the side agreement, which the Trustee argues did exist between the parties and upon which this action is bottomed, is an illegal one which this Court will not enforce.

## CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and this adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (E).

2. The Defendant's motion for summary judgment seeking dismissal of this adversary proceeding is granted.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.

EXHIBIT 1

# PURCHASE AGREEMENT

THIS AGREEMENT IS MADE THIS 9TH DAY OF MAY 1988 IN ORDER TO FACILITATE THE SALE OF THE Premises KNOWN AS 15-37 127 ST College Point OWNED BY CROMCO CORP. JESSE Cromey Sole SHAREHOLDER

JOHN ORTA AGREE TO PAY JESSE CROMEY $200,000 OVER THE AGREED UPON PURCHASE Price OF $970,000. AS Follows $50,000 UPON SIGNING OF CONTRACT OF SALE. $50,000 UPON Closing OF SALE. $100,000 TO Be PAID STARTING ONE YEAR AFTER DATE OF Closing, TILL ENTIRE AMOUNT PLUS TEN Percent INTEREST IS PAID IN FULL. MONTHLY INSTALLMENTS ARE TO BE NO LESS THEN $5000 INCREMENTS

AGREED TO THIS DATE

JOHN ORTA

AGREED TO THIS DATE

Jesse Cromey
7/12/88 PAID TO DATE 39500.00 JC

WITNESS
DATE

$59,000 9/27/88 PD TO DATE JC

WITNESS
DATE